## JOHN C. HEMAN v. CITY OF ST. LOUIS,
### Appellant.

Division One, July 3, 1908.

1. **STREET IMPROVEMENTS: Extras: Allowance Against City.**
Where plaintiff and the city entered into a valid contract for
the reconstruction of sidewalks; he performed the work and
furnished the materials, as extras, in compliance with the terms
of the contract; the extras were reasonably worth the prices
charged, and he and the street commissioner agreed upon those
prices, as provided by the contract; the city duly accepted the
work and materials, and he made a demand for payment and
payment was refused, he is entitled to judgment against the
city in a suit on the contract.

2. ——: ——: ——: **Contract: Competitive Bidding.** The
charter of St. Louis authorizes the board of public improve-
ments to annually enter into a contract for so much of the re-
construction of a sidewalk as is not properly chargeable to the
adjoining property and falls outside of the regular street im-
provement, such as sewer inlets, coal holes, plugs and meters in
the sidewalk, and steps and entrances of various kinds to adjoin-
ing buildings, and other odd jobs of paving, such as the narrow-
ing of the walk after the contract was made and the work was
begun, etc. For the regular street improvement which can
be foreseen, competitive bidding is necessary; but for this ex-
tra or emergency work, competitive bidding is not necessary.

3. ——: ——: **How Determined: No Express Provision.** Al-
though there was no express charter provision authorizing the
street commissioner to determine what part of the sidewalk
construction should be classified as extras, or that authorizes
him to agree with the contractor on the prices to be paid
therefor, yet if it is clear from the charter that it authorizes
the city to make such contracts, the board of public improve-
ments, which has charge of such matters, may properly make
the contract, and therein authorize the commissioner both to de-
termine what is extra and the price to be paid therefor.

4. ——: ——: **Prices: Designated by Contract.** Where the con-
tract fixes the price for the regular street improvement, and also
provides generally for doing extra work, but does not designate
any particular work as extra, nor fix the price therefor, but au-
thorizes the street commissioner to determine what is extra
work and the price to be paid for it, there is no ground for
contending that the contract specified the prices to be paid

for the extra work; and where he fixed only the price of the extra work, there is no foundation for the claim that the Court, in permitting the contractor to show that the prices were approved by the commissioner, permitted the contractor to recover the reasonable value of the extras.

5. ————: ————: **No Appropriation.** It is not incumbent on the contractor, in order that he may recover judgment against the city for extra work done under a contract for the improvement of streets and sidewalks, to show that an appropriation had been made to pay for such extra work. In the absence of a showing that the charter prohibits such contracts until after appropriation is made, and in the absence of a showing that no appropriation was made, or that the amount of the judgment is in excess of the appropriation, it will be assumed that an appropriation is not necessary.

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglas,* Judge.

AFFIRMED.

*Charles W. Bates* and *Benjamin H. Charles* for appellant.

(1) The city of St. Louis is not liable for "extras," under charter provisions requiring work to be let by competitive bidding; particularly in view of other provisions of the charter and law prohibiting payment under the contract in excess of the appropriation therefor. Charter, secs. 15, 18, 24, 27, 28, art. 6; O'Brien v. New York, 139 N. Y. 596; Gage v. New York, 110 App. Div. 419. See, generally, without reference to particular charter or statutory provisions: 1 Abbott on Mun. Corps., pp. 659-662; 1 Smith on Mun. Corps., sec. 741; McBrien v. Grand Rapids, 56 Mich. 105; West Chicago Park Comrs. v. Kincade, 64 Ill. App. 116; Boston Elevator Co. v. Cambridge, 163 Mass. 64. (2) The city is not liable for work and materials as "extras" which are specifically called for by the contract and for which the contract fixes the price. The fact that certain kinds of work covered by the prices

fixed by the contract are called "extra work" does not make such work extra the contract. No recovery can be had for the reasonable value of the work when the contract itself fixes the price. (3) No recovery can be had for work and materials as extras when such work and materials are incidental and necessary to the complete doing of the work specifically required by the contract and for which the contract fixes the price. Stewart v. Cambridge, 125 Mass. 102; Braney v. Millbury, 167 Mass. 16; O'Brien v. New York, 139 N. Y. 596; Lentilhon v. New York, 102 App. Div. 548, affirmed, 185 N. Y. 549; Burnham v. Milwaukee, 100 Wis. 55; Comstock v. Eagle Grove, 111 N. W. 52; Gardner v. Detroit, 131 Mich. 21. As to what are incidentals, see: St. Joseph v. Owen, 110 Mo. 455; Independence v. Briggs, 58 Mo. App. 241; Sawyer v. Chicago, 183 Ill. 59. (4) The city is not liable in this action for work done and materials furnished by the contractor for which the charter requires payments to be made in special taxbills. St. Louis charter, art. 6, sec. 24; Keating v. Kansas, 84 Mo. 415. Especially when the contracts expressly provide that upon delivery of the taxbills to the plaintiff his receipt shall be taken in full for all claims against the city on account of said work. (5) The city is not liable for work performed under the contract in excess of the appropriation made therefor. Mister v. Kansas City, 18 Mo. App. 227; Pryor v. Kansas City, 153 Mo. 135; Williams v. New York, 104 N. Y. Supp. 20; People v. Snideker, 94 N. Y. Supp. 323, affirmed, 182 N. Y. 558. (6) The street commissioner had and could be granted no authority to determine whether the contractor was entitled to pay for extra work. His functions and powers were confined to matters affecting the performance of the contract itself. Braney v. Millbury, 167 Mass. 18; Stewart v. Cambridge, 125 Mass. 103. See also analogous cases in Missouri: Wolcott v.

Lawrence Co., 26 Mo. 272; Saline Co. v. Wilson, 61 Mo. 239; Heidelberg v. St. Francois, 100 Mo. 75. (7) An officer not authorized to contract cannot ratify so as to bind the city, nor can ratification take place so as to bind the city except by the authority and in the manner required by the charter for the making of a valid contract. Johnson v. School Dist., 67 Mo. 321; Crutchfield v. Warrensburg, 30 Mo. App. 463; Heidelberg v. St. Francois Co., 100 Mo. 76; Co. v. Cambridge, 163 Mass. 64; Waterson v. Nashville, 106 Tenn. 424.

*Alexander Young* and *Chester H. Krum* for respondent.

This appeal is absolutely without merit. If appellant were not a public corporation upon whose acts the laws have placed limitations intended for the protection of the people, the judgment should be affirmed with damages for vexatious delay. 1. Each cause of action is based upon a contract made in conformity with the charter. 2. Recovery was had upon each cause of action in strict conformity with the theory of recovery as indicated by the particular count. 3. The referee found, and his finding is conclusive, that respondent not only fully performed the respective contracts, but that the work was done as ordered by the street commissioner, was approved by him and its price by him fixed and allowed. 4. Each contract had the approval of the then city counselor and contains provisions for "extra work" upheld by this court as fully authorized by the charter. Steffen v. St. Louis, 135 Mo. 44; Allen v. Rogers, 20 Mo. App. 290. 5. There was no want of corporate authority to contract, and the street commissioner was strictly within the line of his authority in directing the work, approving the same and fixing its price. As this court tersely said in Steffen's case, the plea of the city is "unconscionable under the circumstances." We respectfully submit

that where a contract is made by a municipal corporation, by authority of its charter, the obligations of the corporation do not differ in an essential respect from the obligations of an individual who has contracted with some other individual. There is nothing upon this appeal which can commend it to the court, and the judgment should be affirmed.

WOODSON, J.—This is a suit on a contract for extra work done and materials furnished by plaintiff under a contract with the city to construct and repair sidewalks upon the streets thereof.

The petition was in three counts, and the answer consisted of a general denial and several special defenses, all of which are mentioned in the referee's report, which will follow in full. The cause was referred to the late Mr. Arba N. Crane, who found the issues for plaintiff, and reported those findings to the court. Exceptions to the report of the referee were overruled, and judgment rendered thereon for plaintiff. Defendant excepted, and, after an unavailing motion for a new trial, duly appealed to this court.

As the issues made by the pleadings, and the facts found by the referee, are clearly stated in his report to the court, for economy of space we will here set out the report, which is as follows:

"I, the undersigned, to whom the above-entitled cause was referred to try the issues herein, having duly qualified by taking the statutory oath, have proceeded to hear the cause on said order, both parties appearing.

"The testimony adduced before me appears in the record of four volumes, which I file herewith, and I also file the exhibits introduced at the hearing.

"The petition, amended by interlineation, has three counts. The statement is simplified by dealing first exclusively with the first count, the decision as

to which involves almost every point to be decided as to the other two counts.

"The defendant entered into a valid contract with plaintiff, numbered 3,520, for the construction of sidewalks with artificial stone flagging, and repairing sidewalks with brick whenever and wherever directed by the street commissioner of defendant within the portion of the city of St. Louis defined in the contract, from the date of the contract in June, 1893, to July 1, 1894. Under that contract plaintiff acted. These allegations of the petition are met only by general denial, and I find have been proved without conflicting evidence. The petition which sets out the contract *in haec verba,* proceeds to state that plaintiff in course of various constructions which he was called on to make under the contract, under the orders and directions of defendant's street commissioner, did extra work and furnished extra material. Exhibit B 2, referred to in the petition and treated by me as part thereof, states under respective notice numbers, orders for construction and repair involving such alleged extra work and material and the prices charged therefor. The defense, applying to all of the three counts, is a general denial, and a special defense, the gist of which is, first, that under provisions of the charter of the city of St. Louis, cited in the answer, the city cannot be held liable for the extra work claimed in the petition; second, that the contract, arguing from certain cited provisions, does not bear an interpretation authorizing any charge for such extra work; third, that any provision of the contract authorizing such charge would be void as in contravention of the city's charter; and, fourth, that plaintiff had received special taxbills in full discharge of all claims under the contract. The reply is a general denial of the answer.

"The general situation, as I suppose both sides concede it—at all events, as I formally find it—is as

follows: When a piece of sidewalk within the district covered by plaintiff's contract had been found by the city authorities to require re-construction, the owner of the adjoining premises was notified. If he failed to do the work within a defined time, plaintiff was notified by the street commissioner to reconstruct. This notice to the owner was a prerequisite to the issuance of a special taxbill for the work done by plaintiff. This notice to the contractor, plaintiff, was in writing. For this reconstruction plaintiff was paid by special taxbills against the owner, which taxbills were for the exact amount of space covered by the work. Such orders to plaintiff to reconstruct were frequent, often several on a day. When carrying out this reconstruction, incidental work would frequently be necessary. There would be public constructions on the sidewalk, such as the cover of the sewer inlets and the various plugs and meters in public use; there would also be coal holes in the middle of the walk, and steps and entrances of various kinds adjoining the building. The sidewalk in each case was to be an uninterrupted plane. I find that the city required that of plaintiff. When a condemned sidewalk was reconstructed, the structure mentioned, in very many cases, if left untouched, would have constituted irregularities, depressions or protuberances. I find under the evidence that the plaintiff was required by the street commissioner to adjust all these structures to the plane of the sidewalk.

"We have thus a class of alleged extra work arising out of the city's demand that everything about the sidewalk should be adjusted to the required plane. With these items I have associated the cases where extra work is claimed on steps or other structures appertaining to the premises of the property adjoining the sidewalk, supposed to be in fulfillment of the city's duty to adjust such structures, to reconstruct the sidewalk and to see to it that the owner was in no way

injured by the change. This class of items it is practically impossible to separate from the preceding group, so far as plaintiff's bill is concerned; since the items of that bill in most instances cover both kinds of work in one item without indications by which apportionment can be made. Since all these items arose under an order from the street commissioner, as will appear by my subsequent findings, I deem it unnecessary, for the purpose of any legal question, to attempt discrimination between extra work on the sidewalk and extra work on construction of the adjoining property. All items of Exhibit B 2 covering any work claimed to be done incidentally to carrying out the work which was done under any notice given by the street commissioner are grouped together in the first list of ultimate findings hereinafter set forth. In that same group, I have placed such cases of extra grading or filling as appear in the contract.

"Another class of items in plaintiff's account rests on this state of affairs: The city would order plaintiff to reconstruct some sidewalk. This order would give the width of the sidewalk, either expressly or by use of the term 'full width,' which has an understood meaning in each locality. The plaintiff would excavate and lay cinders to the required width. Then, he claims, the city would order him to lay a narrower sidewalk; he finished the narrower sidewalk, receiving his special taxbill therefor; and introduces in his account an item for the cost of preparing the excess over the finished sidewalk by excavating and placing of cinders. My second list of ultimate findings covers this class of items.

"A third group is composed of a few cases where plaintiff was directed to reconstruct, and, after he had done some work, was ordered to stop.

"Fourthly, is a single case where plaintiff, under

claim of order, reconstructed a piece of pavement beyond the limits fixed in the notice to the adjoining proprietor and in the notice following thereon to plaintiff.

"I next collate from the contract between plaintiff and defendant set forth in the petition what seems necessary to the consideration of the case. The contract requires plaintiff to reconstruct sidewalks where property-owners failed to reconstruct in compliance with ordinance.

"Section 4 of the contract is as follows: 'Any work not herein specified, which may be fairly implied as included in this contract, of which the street commissioner shall judge, shall be done by the first party without extra charge. The first party shall also do such extra work in connection with this contract as the street commissioner may especially direct, and if it shall be for a kind for which no price is stated in this contract, such price shall be fixed by said commissioner; but no claim for extra work shall be allowed unless the same was done in pursuance of special orders as aforesaid, and the claim presented as soon as practicable after work is done and before the final estimate.'

"Section 5 is as follows: 'To prevent all suits and litigations, it is further agreed by the parties hereto that the street commissioner shall, in all cases, determine the amount or quantity of the several kinds of work which are to be paid for under this contract, and he shall decide all questions which may arise relative to the execution of this contract on the part of the contractor, and his estimates and decisions shall be final and conclusive.'

"Section 28, article 6, of the charter is referred to in the argument, being set forth in section 7 of the contract, though I think it clearly inapplicable to any phase of this case.

"Section 10 of the contract provides that all orders for construction and repairs of sidewalks shall be given every morning at the street commissioner's office, with provision for penalty for failure to complete the work in a time which the order must specify.

"The prices are then specified, being for constructing sidewalks 'known as' different kinds of 'flagging,' for repairing and patching old sidewalks, 1, with flagging, 2, with new brick, 3, old brick. No other prices are specified.

"Under 'Manner of Payment' it is provided that 'the payment for extra work in making excavation or refilling sub-foundations and for furnishing and setting new curbing and for taking up and re-setting old curbing' shall be made by the city. 'The remainder of the work embraced in this contract shall be paid by special taxbills,' etc.

"As to the manner in which this alleged work was performed, I make the following finding: When performance under the contract began, the street commissioner of defendant directed plaintiff to do without further order the incidental work of the character above illustrated, necessary to make the pavement a good job and to properly protect the adjoining proprietors from any detriment caused by the change of the pavement. A restriction that more important matters should be specially referred to him, I think is of no practical bearing, since I find that the only item which would seem to come under this exclusion, under notice 483, the second item in the first list hereinafter set forth, was given personal attention by the street commissioner.

"I find plaintiff did all the work claimed by him of the nature coming under the first group of items, in a few instances under special orders from the street commissioner or his authorized deputies; in most instances, however, under the general direction of the

street commissioner above given. I do not find sufficient evidence of a written order for this extra work in the first group in any special case.

"Plaintiff did this alleged extra work in every case in the presence of and with the knowledge of an authorized representative of the street commissioner, some such representative being continuously present during the performance of each job under the contract. As the work claimed to be extra on each job was completed, within a short time (less than a month) thereafter, and before the issuance of a taxbill on the work for which the claimed extra work was incidental, there was submitted to the street commissioner a claim for such extra work, stating the price claimed therefor. There were discussions between the plaintiff and the street commissioner as to the charges on some items, and I find that the commissioner and plaintiff finally agreed on the charges as in the exhibit, and as hereinafter found. Each and every item was O. K'd by the street commissioner with his own hand and given to plaintiff. These O. K'd charges as to most items were produced in evidence, plaintiff being unable to find the balance.

"I further find that the price charged for each item was reasonable; that no part of these items was incorporated in special taxbills against the property-owners. There must be a finding also as to whether the items charged as 'extras' were really extras; whether they did not regularly come under the contract and should not have been charged in the special taxbills. If the issues were presented badly on the contract, together with the evidence as to the work done, several items would be hard to determine. For instance, as to work around trees, so frequently recurring, it may be well questioned whether it was not incidental to the contract. But the bulk of the items are clearly outside of the contract. As to the doubtful

items, I think it a controlling factor that the street commissioner, representing the city in that behalf, ratified their character as 'extras.' His authority to speak for the city seems clear. The acts of the parties decide the interpretation of contracts in cases of doubt. I find that each and every item in my itemized account was 'extra.'

"By answer and appropriate objections to the introduction of evidence, defendant insists that under the city's charter the city can in no way be made liable for work incidental to pavement reconstruction to be paid for by special taxbills.

"Steffen v. St. Louis, 135 Mo. 44, deals with recovery from the city under a contract, almost, if not absolutely, identical in form with the one here involved. The city was held liable for work begun under city orders, but stopped before completion. Under the reasoning of the opinion, I think it clear that the city can be liable for extras.

"Again, the defendant urges that the provisions as to manner of payment, directing that the payment for a few defined classes of work shall be made by the city, limits the extra work for which the city may be made liable, including the extra work not specifically mentioned. I do not think this clause does anything more than lay down a few classes of work for which the city is always liable.. The contract in section 4 provides for such extra work in connection with this contract as the street commissioner shall specifically direct; and gives him, in section 5, the power to decide all questions which shall arise relative to the execution of this contract on the part of the contractor. I think it clear that the contract contemplates 'extra work' beyond 'making excavations, refilling sub-foundations and furnishing and setting new or old curbings.' I think it clearly contemplates work for most of which there would be no legal right to issue special taxbills.

"Section 4, quoted in full above, provides for 'such extra work in connection with this contract as the street commissioner may specifically direct. . . . But no work shall be allowed unless the same was done in pursuance of special orders.'

"I do not think that anything in the contract requires such special orders to be in writing. I find there was a general order from the street commissioner to plaintiff to do extra work of the character shown in the first group of items without coming in for a special order in each individual case. Quite a number of the items in this group I am satisfied were specially ordered by the street commissioner or his authorized representatives as extra work, though plaintiff can identify only a small number of such cases.

"In cases which defendant claims to have been done only under a general order, I make my finding of fact, that in each instance some authorized representative of the street commissioner was present during the whole time any job of paving was being done; that in each case said representative required the extra work to be done, and saw that it was done. While I find the representative required such extra work to be done, I believe that in most instances there was nothing said between plaintiff and such representative as to whether such work was 'extra.' Shortly after completion of such a piece of work, a bill was presented in each instance to the street commissioner for the extra. In all cases of items in group one, the street commissioner approved the bill in the amount stated below, as an extra.

"On these specific findings, I base my general finding that each and every item of group 1 was done in pursuance of 'special orders.'

"As to group 2, consisting of cases where the sidewalk was narrowed from the first order, I find there was a special order in every case. I also find that

in each and every case covered in the four groups the claim was presented as soon as practicable after the work was done, and before the final estimate.

"The third group of items have the following facts in common: Plaintiff received the regular notice to reconstruct; proceeded thereunder, and while the work was in hand, was notified by an order emanating directly from the street commissioner to suspend work, and did so. In all cases the plaintiff's bill for what was thus done under the street commissioner's orders was approved by the street commissioner.

"In the cases under notice Nos. 731, 1090 and 1452, plaintiff was directed by the street commissioner to relay the brick pavement, did so, and included charges therefor in the bill which the street commissioner approved.

"In cases 731, 1291 and 1292 it appears that the adjoining owner had not been served with the jurisdictional notice. In No. 1210 there was no ordinance authorizing the laying of any pavement by the city.

"Under notice 1005, where it seems there was due notice to the owner, plaintiff completed part of the job, being extras of the character of those in group 1, involved in his claim, and had partly done the remainder of twenty-odd feet of his order, when the commissioner directed him to stop. For the completed work plaintiff has special taxbills, and charges as an extra in this suit for the partly finished portion of the pavement.

"In all these cases the plaintiff complied with the personal directions of the street commissioner. I find his demand in each and every case was presented in due time and was approved by the street commissioner. I think under the ruling in the Steffen case he is entitled to recover on all these items of the third group.

"I have put fourthly by itself an item involving unsegregated elements of the nature of these under

group 1, resting in greater part on the following state of facts, as I find them:

"The notice to reconstruct, to the owner, duly served, described a particular frontage; the order to plaintiff, No. 117, conformed to the description. The plaintiff, under direction of the street commissioner or his authorized agent, laid ten feet more of granitoid than the order to plaintiff or the underlying notice to the owner called for. There is no charge for laying that ten feet, but it seems an unascertainable portion of the bill for $21.25 charged in this item as extra work of the nature of claims in group 1 was for work in this ten-foot strip. The bill for extras including this element was O. K'd by the street commissioner. I think it should be allowed.

"I herewith present my list of items of what plaintiff is entitled to recover under my findings in four groups, as follows:

"The left-hand column gives the number of the notice from the street commissioner to plaintiff under which the extra work was done—the right column states the amount which I find should be allowed on each item:

"1. Claims for extra work on completed pavements, consisting of alterations of structures on the pavements to maintain the level, and of alterations, readjustment and repairs on pavement of structures appurtenant to premises of adjoining owner:

| No. of Order. | Amount. |
|---|---|
| 471 | $ 27.20 |
| 483 | 413.05 |

[Then follow several pages of itemized amounts and the number of notices or orders to make sidewalks in manner shown above. These are omitted. The aggregate finding under this class, $3,499.45.]

"2. Cases where work was done under original order and sidewalk narrowed thereafter by defendant's

order. [Then follows statement as under first class, aggregating $1,004.70.]

"3. Cases where work was partially done and countermanded. [These items aggregate $755.75.]

"4. Incidental work on authorized pavement as above found:

117                           $21.25.

"I think all the items above listed should be allowed.

"All items in Exhibit B 2 not above listed were either withdrawn by plaintiff or else, in my opinion, not proved. I find against plaintiff on all such items.

"The items whose allowance I recommend aggregate $5,281.15.

"I find that demand was made not later than August 1st, 1894, that interest be allowed from that date.

"The second count is for a similar claim for extra work under a contract, numbered 3,712, in another district of the city, from July 20, 1894 to July 1st, 1895.

"The contract underlying this count is in all respects concerning this suit analogous to the one underlying the preceding count, save in one particular: The first paragraph in contract No. 3,520, first count under 'Manner of Pavement,' quoted before, directing that extra work in excavation, sub-foundation and curbing shall be paid for directly by the city, does not exist in Contract 3,712, so the latter contract states that 'all the work embraced in this contract shall be paid' in special taxbills.

"The distinction strikes me as unfavorable to the defendant's claim that the city is not liable for the extra work authorized by section 4, the price of which the street commissioner determines, so far as not coming within the limited number of kinds of work for which a price is fixed. The work thus clearly authorized is 'of a class for which no special tax bill could

issue.' The 'Manner of Payment' provision can only cover the work for which special tax bills can be issued. I construe the whole contract as authorizing the street commissioner to order extra work and make the city liable therefor.

"The items of this count, exhibit D 2, fall under the three first groups of the prior count. I make the same findings. I find each item was done under special order of the street commissioner—in group 2 and 3 under his personal order — in group 1 in the same manner in which I made the corresponding finding in the first count. The work was done under the supervision of the street commissioner or his authorized representative. It was in each instance worth the price charged; the bill was O. K.'d by the street commissioner in person, which occurred in each instance as soon as practicable after the extra work was done, and prior to final estimate.

"I find the issues in favor of plaintiff as to the following items of Exhibit D 2, the classification being the same as with regard to the first count:

"1. Items omitted aggregate $162.60.

"2. Items omitted, aggregating $93.00.

"3. Items omitted, aggregating $200.00.

"I find evidence insufficient as to notice 310— $37.40 claimed—and recommend the rejection of that item.

"The items of the foregoing lists whose allowance I recommend aggregate $456.20. Demand was made not later than August 1st, 1895, and interest should be allowed from that date.

"The claim on the third count under contract 3,712, of which the items appear in Exhibit F 2, is in all respects analogous to the claim in the second count.

"I repeat my findings as to the general facts common to all of the claims, and give the list of items under this third count, as under the prior two counts,

with the recommendation for their allowance in the sums set forth.

"I find the issues in favor of plaintiff as to the following items of Exhibit F 2, the classification being the same as with reference to the first count:

"1. Items omitted aggregate $150.10.

"2. Items omitted, aggregating $183.70.

"I reject item 387 for $16.40.

"The items of the foregoing lists, whose allowance I recommend, aggregate $333.80. Demand was made not later than August 1st, 1895, and interest should be allowed from that date."

On the report of the referee, judgment was rendered for plaintiff on all counts, the amount of which, including interest, was $9,990.41.

Appellant assigns numerous errors committed by the trial court, but, when properly considered, we are of the opinion that they are all fairly embraced in the three following:

FIRST. The findings of fact of the referee are not sufficient in law to sustain a judgment in favor of the plaintiff, and the court erred in rendering judgment for the plaintiff in said report.

SECOND. The court erred in holding that the plaintiff could recover the reasonable price of work and materials as extras where the written contract under which plaintiff claims to have done the work and furnished the materials specified the prices thereof.

THIRD. The court erred in holding that the plaintiff could recover against the city on a contract for work and materials in the absence of any showing that an appropriation had been made therefor, or in allowing a recovery in excess of the appropriation.

I. We are unable to lend our assent to the first assignment, for the reason that the evidence preserved in the record sustains the referee in his findings, in that he and the city entered into the contract sued on; that

he performed the work and furnished the materials, as extras, in compliance with the terms of the contract; that they were reasonably worth the prices charged and that he and the city engineer agreed upon those prices as provided for by the contract; that the city duly accepted the work and materials; and that he made a demand for payment, and that payment was refused.

Counsel for appellant contend that those facts do not entitle the respondent to a recovery, for the reason, first, that the evidence shows that the extra work done and materials furnished, were not done and furnished under a contract let to him by competitive bidding, in pursuance to an ordinance of the city, ordering the work to be done; and, second, because the city engineer had no authority under the charter to determine what was extra work to be done, or the price to be paid therefor.

Section 15 of article 6 of the charter reads as follows:

"All ordinances recommended by said board shall specify the character of the work, its extent, the material to be used, the manner and general regulations under which it shall be executed, and the fund out of which it shall be paid, and shall be endorsed with the estimate of the cost thereof; provided, that no improvement or repairs shall be ordered upon any future street, alley or highway, which shall not have been opened, dedicated or established according to the provisions of this charter and law; and provided further, that nothing in this article shall be so construed as to prevent the Board of Public Improvements, through the proper officer thereof, from annually letting and entering into contracts on the first day of July of every year for the grading, constructing, reconstructing and repairing of sidewalks and repairing street, alley and gutter paving and such other similar work, which

may be ordered by ordinance, or may become necessary to be done during the year.''

By reading this section of the charter, it will be seen that it does not require the work mentioned in the last line thereof to be done in pursuance of an ordinance of the city, specifying the character of the improvements to be made; but the second proviso of that section expressly authorizes the Board of Public Improvements to annually let contracts on the first day of July of every year for doing this class of work.

We take it that the last line of that section refers to all little odd and end jobs of paving, repairing and other improvements of the sidewalks, which are too insignificant to be foreseen, and which are not properly chargeable to the adjoining property and specially provided for in each ordinance and contract providing for regular street improvements. For that reason that class of work falls outside of the regular street improvements, which must be ordered done by ordinance, and performed under contract awarded by competitive bidding. All such work which does not fall within the regular street improvements and which has its origin more or less in emergency and lack of foresight are designated in the annual contract as extra work; and sections 4 and 5 thereof provide as to how the character of such work is to be determined and paid for.

We are, therefore, of the opinion that the contract for the extra work sued for is authorized by the charter.

As to the second contention of counsel for appellant, it may be conceded that there is no express charter provision authorizing the street commissioner to determine what part of the improvement shall be considered as extra, or which authorizes him to agree upon the price to be paid therefor; but it is perfectly clear from reading said section 15 of the charter that it grants to the city the power to make such contracts,

which necessarily implies that it must pay for all such improvements ordered by it. In the absence of the charter provision designating the person who shall determine what is extra work and fix the prices to be paid therefor, we are of the opinion that the Board of Public Improvements, who has charge of such matters, very properly selected and intrusted that duty to the street commissioner, who, by section 35 of article 4, is given special charge of the construction, reconstruction, repairing and cleaning of the public streets, avenues and alleys of the city; and sections four and five of the contract sued on designate the street commissioner as the person to determine those questions. Said sections read as follows:

"4. Any work not herein specified, which may be fairly implied as included in this contract, of which the street commissioner shall judge, shall be done by the first party without extra charge. The first party shall also do such extra work in connection with this contract as the street commissioner may especially direct, and if it shall be of a kind for which no price is stated in this contract, such price shall be fixed by said commissioner; but no claim for extra work shall be allowed unless the same was done in pursuance of special orders as aforesaid, and the claim presented as soon as practicable after work is done and before the final estimate.

"5. To prevent all disputes and litigation, it is further agreed by the parties hereto that the street commissioner shall, in all cases, determine the amount or quantity of the several kinds of work which are to be paid for under this contract, and he shall decide all questions which may arise relative to the execution of this contract on the part of the contractor, and his estimates and decisions shall be final and conclusive."

The conclusions above reached are supported by section 27 of article 6 of the charter, which, in express

terms, makes it the duty of the Board of Public Improvements to make all necessary repairs requiring prompt action without submitting them to the assembly, as it must do regarding all general street improvements.

In fact, if he had not been designated as the person who should determine what work was extra and fix the price thereof, it would have excited suspicion, to say the least.

II. It is next contended by counsel for appellant that the court erred in holding that the respondent could recover for the reasonable price of work and materials as extras where the written contract under which plaintiff claims to have done the work and furnished the materials specified the prices thereof.

Learned counsel overlook the fact that while the contract provides generally for doing extra work, yet it designates no particular work of that character to be done, nor does it fix the price to be paid therefor; but authorizes the street commissioner to determine, as the emergency may arise, when extra work shall be done and to fix the price thereof. In other words, while the contract authorizes the street commissioner to have extra work done, yet in all other respects that character of work is extra and beyond the contract. This is not only the spirit of the contract, but it is also the plain letter thereof; and when so read the contention of counsel for appellant, that the street commissioner has no power to fix or agree upon prices where the contract states them, has no foundation upon which to stand, for the reason that he has not fixed any prices for work and materials where they are provided for and fixed by the contract; but has fixed the prices for work which is extra of the contract.

We are, therefore, of the opinion that appellant's second contention is untenable.

III. The third proposition presented by counsel

for appellant presents a much more serious question for solution; and that is, that the respondent cannot recover against the city on a contract for work done and materials furnished for such street improvements in the absence of any showing that an appropriation had been made therefor, or in allowing a recovery in excess of the appropriation.

Counsel for appellant have not called our attention to any charter provision prohibiting the city from entering into contracts providing for this class of work without the city first makes a specific appropriation for the purpose and out of which such improvements must be paid for; and after a most careful investigation of the charter, we have been unable to find any such provision. We, therefore, take it for granted that there is no such provision, and that there is no limit to the amount the city may become indebted for such improvements, except the constitutional limitation of five per cent on the assessed valuation of the property located within the city limits.

Section 28 of article 6 of the charter relates only to street improvements which are required and ordered to be made by ordinance, and has no application whatever to this emergency and unforeseen class of work, called "extra work."

This seems to be the view this court took of the contract to do this class of work in the case of Steffen v. St. Louis, 135 Mo. 44, where the plaintiff was permitted to recover for similar work and materials, without, however, considering the question of appropriation. That point seems not to have been made in that case, and the court and counsel for both parties assumed that an appropriation was not necessary in such cases. We think that assumption was correct and is controlling in this case.

The judgment is affirmed. All concur except *Valliant, P. J.,* absent.