# EMPIRE BUILDING COMPANY, Appellant, v. HOPKINS.

### Division Two, June 11, 1907.

1. **INSTRUCTIONS: No Exception.** Where the court modified an instruction directing a finding for plaintiff by adding the words, "unless the court finds the facts to be as stated in defendant's instruction number one," and no exception was saved at the time to the giving of defendant's instruction number one, defendant's instruction must be regarded as correctly presenting the law of the case, and an objection made to it for the first time in the motion for a new trial cannot be considered. Without an exception saved at the time it must be held that the court committed no error in adding the words to plaintiff's instruction.

2. ———: ———: **Lease and Release.** And where the suit was on a lease, and the court modified plaintiff's instruction directing a finding for plaintiff by adding the words, "unless the court finds the facts to be as stated in defendant's instruction number one," and defendant's instruction number one declared that if the court, sitting as a jury, "finds from the evidence that the defendant, before the expiration of the lease in question, surrendered the premises therein described to the lessor, and such surrender was accepted by the lessor pursuant to agreement between the parties that in consideration of such surrender the plaintiff would release the defendant from liability for the delinquent and future rents, then plaintiff cannot recover," and no exception was saved to the giving of that instruction, it must be held to have correctly stated the law of the case, and is not reviewable, and a finding for defendant that before the expiration of the lease the defendant surrendered the premises and plaintiff released him from further liability thereunder, is conclusive, and the judgment must stand.

Appeal from St. Louis City Circuit Court.—*Hon. Horatio D. Wood,* Judge.

AFFIRMED.

*Daniel Dillon* for appellant.

It is plain that the words inserted by the court into plaintiff's instruction 1 carried the vice of defend-

ant's instruction 1 into plaintiff's instruction 1, and made it erroneous. There was no substantial evidence on which to base defendant's instruction 1. It is plain that there was no surrender of the premises before the expiration of the lease to the lessor. There could consequently be no acceptance of such surrender. To give instructions not based on the evidence, or, in other words, to instruct a jury to find in favor of a party if they find certain facts, when there is no evidence which would justify them in finding such facts, is erroneous. This is elementary. Franz v. Hilterbrand, 45 Mo. 121; McAtee v. Vanlandingham, 75 Mo. App. 53; Palmer v. Telephone Co., 91 Mo. App. 115; Chemical Co. v. Lackawana Line, 70 Mo. App. 284; Wasson v. McCook, 70 Mo. App. 397.

*Rassieur, Schnurmacher & Rassieur* for respondent.

(1) If there is any evidence to support the finding, it is the duty of the appellate court to affirm the judgment. (2) The evidence shows a valid surrender of the leased premises by the lessee, the acceptance of the same by the lessor, and the substitution of a new tenant in the place and stead of the original lessee. Taylor on Landlord and Tenant, secs. 507, 509, 514, 515; Wood on Landlord and Tenant, secs. 497, 498. (3) The purpose for which the premises were let was unlawful. Sec. 2127, R. S. 1899. Where a lease is obtained for a purpose prohibited by law, and the lessor has knowledge of such intent and purpose, no right of action can be maintained on the lease. Ashbrook v. Dale, 27 Mo. App. 649; St. Louis Fair Assn. v. Carmody, 151 Mo. 573; Tri-State Co. v. Amusement Co., 192 Mo. 423. And if such unlawful purpose is shown by plaintiff's own evidence, it is immaterial whether the illegality of the transaction was pleaded or not. Mil-

burn v. Railroad, 86 Mo. 109; Hudson v. Railroad, 101 Mo. 30; Chaney v. Railroad, 176 Mo. 606.

BURGESS, J.—This is a suit for the rent of a building known as the West End Coliseum, in the city of St. Louis, under a lease dated February 19, 1902, by and between plaintiff as lessor, and the defendant as lessee. This lease was for a term of twelve months, from January 1 to December 31, 1902, the rental being three thousand, six hundred dollars a year, to be paid in equal monthly payments of three hundred dollars, payable in advance on the first day of each month. The lease provided that "Said term may be terminated at any time by either party hereto, by thirty days' notice in writing served on the other party declaring its or his intention so to do. Any failure to pay each month's rent when due, or within five days after demand of the same, to produce a forfeiture of this lease, if so determined by said lessor or his successors. The lease of said premises, or any part thereof, is not assignable under penalty of forfeiture, without the written consent of the said lessor. And it is hereby covenanted that at the expiration of this lease, the said premises are to be surrendered to said lessor, its assigns or successors, in the condition received, only excepting natural wear and decay, or the effects of fire." There was also a clause in the lease by which the lessee agreed to pay double rent for every day he, or anyone else in his name, should hold on to said premises, or any part thereof, after the expiration of the lease.

The petition contained two counts, the first of which alleged that the monthly installment of the rent that became due on September 1, 1902, had not been paid, except that the sum of forty dollars was paid on account of such rent, and that neither the defendant nor any one for him had paid either of the subsequent maturing installments of rent, or any part thereof, and

that there was due plaintiff from defendant the sum of one thousand two hundred dollars as rent for said premises from the 31st day of August, 1902, to the 31st day of December, 1902, less the credit of forty dollars as aforesaid.

The second count of the petition alleged that defendant remained in said premises and held onto the whole thereof for nine months and twenty days after the expiration of said lease by limitation, from December 31, 1902, to October 21, 1903, and that by the terms of said lease defendant became liable and obligated to pay plaintiff rent at the rate of six hundred dollars per month for said period of time, said rent for such period amounting to $5,800, for which judgment was prayed.

The answer contained a general denial of the allegations of each count of the petition, and a further defense to the effect that on or about the —— day of November, 1902, the premises mentioned were surrendered by the defendant to the lessor, who, in consideration thereof, agreed to release defendant from all liability to plaintiff for rent then due or thereafter accruing under said lease, and that such surrender was accepted by plaintiff on said terms and that after January 1, 1903, said premises were occupied by the West End Athletic Club as tenant of plaintiff. The reply was a general denial.

The cause was tried by the court, a jury having been waived, and the issues on both counts found in favor of the defendant, from which judgment plaintiff appeals.

It seems that prior to February 19, 1902, the date of said lease, the premises in question were occupied by an incorporated club known as the West End Physical Culture Club or West End Club, whose business and purpose was the giving of public boxing exhibitions, and it would appear that in February, 1902, the said

club as tenant was required to get some one to assume responsibility for it, and accordingly, plaintiff, as lessor, gave to the defendant, John D. Hopkins, a lease for the term of twelve months.

At the trial the lease in question, signed by the plaintiff and defendant, and containing the provisions above referred to, was read in evidence. It was admitted at the trial that the rent was paid up to September 1, 1902, and that forty dollars were paid applicable to the rent for September, and that no rent was paid applicable to rent after September 1, 1902, except said forty dollars.

W. H. Stevenson testified that he was the agent of the plaintiff and that this rent account was a running account; the payment being put on the credit side and the rent charged on the debit side. The account never balanced; that by direction of defendant and the attorney for plaintiff he wrote the receipts for rent on account. This witness testified that the defendant did not surrender the premises to plaintiff on December 31, 1902, and that plaintiff, about February 1, 1903, brought suit against the defendant before a justice of the peace for possession of said premises and that plaintiff did not get possession till October 21, 1903. It was admitted at the trial that plaintiff brought another suit for possession of these premises before Justice Carroll on April 1, 1903, which was dismissed October 21, 1903.

The evidence showed that the premises in question were used for the purpose of giving exhibitions, such as prize fights, etc. The place was conducted in the name of the West End Athletic Club, and was managed by a man named Haughton. A charge for admission to those exhibitions was made, and money was collected in this way. Stevenson testified that in November, 1902, the defendant, in the presence of Mr. Haughton, authorized him (Stevenson), to go into the box office on

the evenings of these exhibitions and receive from the cashier what money he could get after the expenses of the entertainment were paid, and apply it to the rent, and give receipts therefor, showing how much had been received from defendant on account of rent, and that after that he did attend on certain evenings and receive from the cashier certain sums of money and give receipts therefor as directed, and left the receipts with Haughton, or whoever was in charge, and that the moneys so collected were credited to defendant in the rent account. He further testified that in April, 1903, he, in company with Mr. Thompson, the president of plaintiff, called on defendant and asked him why he did not give up possession of these premises, and defendant said he would give up possession, and that witness said to him, "You say you will give up possession, and yet you defend every suit that is brought against you?" And defendant said, "Yes, I know you have put me to a great deal of expense for lawyers."

Judson M. Thompson testified that he was president of plaintiff company, and in the spring of 1903, in company with Mr. Stevenson, called on defendant, and Stevenson asked defendant why he could not get possession of the place, and defendant said: "I will give you possession." This witness testified that plaintiff did not get possession of said premises until October 21, 1903.

Defendant testified that the premises described in the lease were occupied by the West End Club before the making of the lease; that the club had been unsuccessful and wanted defendant to go on a lease for a year; that Jesse McDonald (who was attorney for plaintiff), would not accept that way, and defendant took a lease for a year in his own name, and the club operated under it; that defendant paid the first month's rent, but paid no more himself. Defendant further testified that in November, 1902, he and Haugh-

ton saw Mr. Stevenson, who told them the rent had not been paid, and was in arrear; that witness told Stevenson that he (witness), had no interest in it, and went on the lease only to help Haughton; and Haughton showed Stevenson that a number of matches (fights), had been arranged for, and Stevenson agreed to go in the box office, and take the profits, and said that Haughton released him; Stevenson was to go to the box office and get the net receipts, all that was not paid out for expenses. He further testified that he saw Stevenson in the box office, and that after that Stevenson did not come to him and ask for rent, and did not ask for possession until the institution of the suit that was served on him, and that when this suit was served on him he sent the notice of the suit to Mr. Haughton.

On cross-examination, witness testified that when he executed that lease it was with the understanding that the business was to be operated by the West End Club, and that he had nothing to do with the management of the concern; that he did not personally pay any rent other than the first or second monthly payment, and that he did not keep any check on the payments of the rent made by Haughton for which he was responsible under the lease. He further testified that when he received the summons in the suit for possession he sent the papers to Haughton with instructions to relieve him (defendant) of all responsibility and trouble connected with it, and Haughton said he would attend to the case. He said he gave the lease to Haughton; that he believed he assigned it, but was not sure; he paid little attention to it, the people (meaning Haughton and the West End Club), assured him they would attend to the rent.

Haughton testified that he was president of the West End Club which had been in possession of the premises before the lease to defendant, and that defendant had never been interested in the club except to

help them.   This witness further testified that about
November, 1902, he took defendant to the office of Mr.
Stevenson, and defendant told Stevenson to go in the
box office and if there was any money left over after
paying expenses that Haughton had agreed to see that
he (Stevenson) got it, and Stevenson said something
like "all right" and came out to the box office the next
entertainment; the rent was then delinquent.   In this
connection this question was asked the witness and he
gave the following answer:   "Q. Well, was anything
said about releasing Hopkins (defendant) from the
lease either accrued or accruing?   Ans.   I wouldn't
want to say, I can't remember the exact conversation.
I can't remember.   Anyone knows me knows I have not
the best memory in the world, anyhow, and I only know
that after then Colonel Stevenson was at every bout
and was up in the office and around the box office and
saw the checking up and everything, and if there was
any money left over, why Colonel Stevenson got it and
I took a receipt from Colonel Stevenson for so much on
rent account."   This witness, continuing, said that af-
ter that Stevenson attended every entertainment and
went in the box office and saw the money counted and
saw what money was paid out and if there was a bal-
ance left it was turned over to him and he gave a re-
ceipt every night for the amount he got.   He further
said, I have here five receipts which he gave on those
occasions, I do not know how much rent was paid in this
way.   On cross-examinaton the witness was questioned
and made answers as follows:

Q.   I wish you would state again what you say
was said in Mr. Stevenson's office about November 20,
preceding the first night he went to your place.   I wish
you would repeat that substantially.   Ans.   I went to
the C. & A. office—Col. Hopkins is around the C. & A.
office a good deal—and I got hold of him, and I think
the day before I had the conversation with Col. Steven-

son, and he thought there was a lot of money being made, and I knew there wasn't, and I says, "I'll get up some kind of an arrangement," and I wanted to see Col. Hopkins. He says, "I haven't seen Col. Hopkins." I says, "I'll bring Col. Hopkins down here to see you," and I went in the C. & A. office and met Col. Hopkins and just took hold of him and went down the street to Col. Stevenson's office, and we went in there and I think Col. Hopkins made the statement to Col. Stevenson that, "If you can get the money out of these people," he says, "I can't," something to that effect. "Well," he says, "I am perfectly willing to let Col. Stevenson go in the box office and see the money come in, and stay with that money, and go upstairs and see the money disbursed, and let him take any moneys that remain over after paying the expenses of the entertainment," and they had some kind of an understanding to that effect, which was mutally agreeable to these two people, because he came out after that and was in the box office every time.

"Q. Is what you have related all you have heard? A. I guess I heard more than that, but unless something was brought to remind me of it, you know, some little thing, I couldn't bring it up. Q. Is that all you recall now? A. That's all I can think of."

McNeil, a witness for defendant, testified that he had been assistant treasurer of West End Club, and that beginning in November, 1902, Mr. Stevenson came into the box office on the evenings of entertainments, and was present when the receipts and disbursements were checked up and received whatever balance was left over.

Haughton was recalled by plaintiff for further cross-examination, and testified that in some suits before justices of the peace he was regarded as agent of J. D. Hopkins (the defendant), and that he had got a continuance once by saying he was agent for the de-

fendant, Hopkins, and that he also swore to an affidavit for a change of venue, as agent of Hopkins, and that he resisted these suits on the basis of fighting for himself and never had any conversation with Hopkins about them, and that the only thing he got from Hopkins was a notice which Hopkins mailed him; and that Hopkins was not in town at the time, and witness never went near him, and witness did not think that Hopkins knew about the suits.

In rebuttal, Mr. Stevenson testified that at the interview in his office, in November, 1902, Mr. Hopkins (the defendant), did not propose that Stevenson should take the proceeds of the box office and release Hopkins from the rent, and that such a statement was never made at any place, and that there never was a proposition to do anything towards releasing Hopkins, and never a suggestion of it, and that there never was a suggestion at the interview that the West End Club should be tenant of the Empire Building Company.

The court gave declaration of law number 1 upon the part of plaintiff and also one upon the part of the defendant.

Plaintiff's declaration of law, number 1, as asked, was as follows:

"The court declares the law to be that if it find from the evidence that on or about the 19th day of February, 1902, plaintiff and defendant entered into a written lease for the premises known as the West End Coliseum, in St. Louis, Missouri, for a term commencing on the first day of January, 1902, and ending on the 31st day of December, 1902, and if it further find that the defendant paid nothing on account of the rent for the months of September, October, November, and December, 1902, therein contracted to be paid, except the sum of forty dollars on account of the month of September, 1902, then its judgment shall be for the plaintiff and against

the defendant for the first cause of action in plaintiff's petition set forth in the sum of one thousand, one hundred and sixty dollars."

Over the objection and exception of plaintiff, this declaration of law, as asked, was refused, and then amended by the court by adding thereto the words "unless the court finds the facts to be as stated in defendant's instruction number one," and then given as amended.

Defendant's declaration of law, number one, to which there does not appear from the record to have been any objection at the time it was given, reads as follows:

"If the court, sitting as a jury, finds from the evidence that the defendant, before the expiration of the lease in question, surrendered the premises therein described to the lessor, and such surrender was accepted by the lessor pursuant to an understanding or agreement between the parties that in consideration of such surrender the plaintiff would release the defendant from liability for the delinquent and future accruing rents, then the plaintiff cannot recover upon either count of the petition."

Plaintiff insists that the court committed error in giving said declaration of law for defendant, and in changing plaintiff's declaration number one by inserting the words, "unless the court finds the facts to be as stated in defendant's instruction number one." It is argued by plaintiff that the words thus inserted by the court carried the vice of defendant's declaration of law into plaintiff's declaration number one, and made it erroneous; but inasmuch as the abstract fails to show that the action of the court in giving said declaration of law for defendant was excepted to at the time, the objection made to it in the motion for a new trial and in this court cannot be considered. [Waller v. Railroad, 83 Mo. 608.] In State v. Reed, 89 Mo. 168, the court

gave five instructions which covered every issue presented by the pleadings and the evidence. The defendant asked no other or additional instruction, and made no objection to those which were given on the trial and for the first time complained of them, as in this case, in the motion for new trial. The court said: "The rule is well settled in civil cases that exceptions must be saved to the ruling of the court at the time the ruling complained of is made, and that it is not sufficient to make the objection for the first time in a motion for a new trial. This rule applies to instructions as well as any other matter of exception." [See, also, Randolph v. Alsey, 8 Mo. 656; Dozier v. Jerman, 30 Mo. 216; Houston v. Lane, 39 Mo. 495.]

So that plaintiff's criticism upon defendant's declaration of law can avail it nothing, and the declaration must be regarded as correctly presenting the law of the defense. This being true, no error was committed by the court in adding the words complained of to plaintiff's declaration of law. Defendant's declaration of law being correct, as it must, under the circumstances, be so regarded, the finding of the court is conclusive that before the expiration of the lease the defendant surrendered the premises in question to the lessor, and that such surrender was accepted by it pursuant to an understanding between the parties that, in consideration of such surrender, the plaintiff would release the defendant from liability for the delinquent and future rents. Plaintiff having failed to interpose an objection to this instruction, it is not now in a position to say that it is not the law, or that there was not evidence upon which to predicate it.

It is said for plaintiff that the court erred in refusing declaration of law number six asked by plaintiff. This requested declaration, it seems to us, is rather an abstract proposition of law and not justified by any is-

sue in the case; hence, there was no error in refusing it.

There was substantial evidence to authorize the finding and judgment of the court which tried the case, and, in our opinion, the judgment should not be interfered with. It is, therefore, affirmed.

· All concur.