EMIL TYON, Respondent, v. WABASH RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals. Opinion Filed June 21, 1921.

1. **APPELLATE PRACTICE:** Objections: No Exceptions Saved: Not Reviewable. In order that any ruling below, which is a matter of exception, may be reviewed on appeal, the record, i. e., the bill of exceptions, duly made a part of the record, must show an exception saved at the time to such ruling.

2. ———: ———: Saving Exceptions: Cannot be Dispensed With by Custom. Requirements that exceptions be saved at the time of the rulings complained of cannot be satisfied or obviated by a rule or custom of the trial court purporting to dispense with the necessity of timely saving exceptions to adverse rulings.

3. **BILL OF EXCEPTIONS:** Reciting Timely Objections and Exceptions: Sufficient for Review: Contrary Statement by Trial Judge Nullity. Where a bill of exceptions, signed by the trial judge, recites that exceptions were in fact saved at the time of the rulings which appellant seeks to have the appellate court review, such exceptions are not removed from the bill by reason of the fact that the trial judge, when he came to sign the bill, inserted therein,

above his signature, the statement reciting that the exceptions in question were not saved at the time of the rulings, but were subsequently inserted by the official stenographer pursuant to custom, and *held* such unauthorized recital or statement, thus attempted to be injected into a bill of exceptions by a trial judge, must be treated as a nullity and disregarded on appeal, and consequently such exceptions to the rulings below are reviewable.

4. **RAILROADS: Interstate Commerce Highways: Federal Safety Appliance Act: Embraces All Cars Used.** The scope of the Safety Appliance Act 1893, as amended, and as supplemented by Act of April 14, 1910 (section 8605-8650, U. S. Comp. St.), embraces all cars used on any railway that is a highway of interstate commerce.

5. ——: **Negligence: Injury to Switchman: Violation of Federal Safety Appliance Act: Liability Per Se.** If the equipment of the car which caused the injury, that is, the handhold, was in fact defective, in violation of section 2 of the Act of April 14, 1910 (Section 8618, U. S. Comp. Stat.), the question whether this is attributable to the carrier's negligence is immaterial, as a positive duty is imposed by the statute upon carriers, subject to the act, to furnish safe appliances in the way of handholds, and a violation of such duty *per se*, casts liability upon the carrier.

6. ——: ——: ——: ——: **Defectively Equipped Car: Property of Another: Liability.** By section 1 of the amendment of 1903 to the Safety Appliance Act, the provisions and requirements thereof and of the Act of 1893 were made to apply to all trains, locomotives, tenders, cars and similar vehicles used on any railroad engaged in interstate commerce (see section 8613, U. S. Comp. Stat.), and section 2 of the Act of April 14, 1910, makes it unlawful for any carrier, subject to the act, to haul, or permit to be hauled or used on its line, any car not equipped with appliances provided for in the act; consequently the carrier's liability under the act to a switchman for injury resulting from a defective handhold, is not affected by the fact that the car so defectively equipped did not belong to the carrier, and was not being used by it for the purpose of transporting a shipment therein, but was picked up by the switching crew and utilized temporarily for the purpose of enabling the crew to reach and remove another car.

7. **FEDERAL SAFETY APPLIANCE ACT: Interstate Commerce Commission: Without Authority to Extend Time for Compliance with Positive Requirements of Act.** While section 3 of the Act of April 14, 1910 (Section 8619, U. S. Comp. Stat.), authorizes the Interstate Commerce Commission to designate the number, dimensions, locations, and manner of application of the appliances provided

for by section 2 of the act, and the proviso to said section 3 provides that the commission may extend the period within which any common carrier shall comply with the provisions of that section, with respect to the equipment of cars actually in service on the date of the passage of the act, and the commission having made certain orders designating the number, dimensions, location, and manner of application of appliances provided for by section 3, including the order that handholds be fastened by bolts, and extended the time. for complying therewith, etc., yet the commission had no authority, nor did it undertake, to extend the time for complying with the positive requirements of said section 2 of the Act of April 14, 1910, and defendant's liability attaches in the instant case because of a violation of section 2, in using a car having a ladder, but which was not equipped with a secure roof handhold.

8. **DAMAGES: Measure of Damages: Loss of Earnings: Instructions: Erroneous.** In an action for personal injuries instituted fourteen months after the date of the injury, where the petition alleged that plaintiff had then lost the earnings of his labor for one and a half months, and would in the future suffer the loss of his earnings, an instruction which failed to limit the recovery for past loss of earnings to the amount alleged in the petition and permitted a recovery for past loss of earnings from the date of the injury to that of the trial, and unsupported by evidence as to earnings actually lost up to the date of the trial, *held*, prejudicial error, and an error that could not be cured by *remittitur*, since there was no way to determine the amount allowed by the jury on account of past and future loss of earnings.

Appeal from the Circuit Court of the City of St. Louis.—
*Hon. J. Hugo Grimm*, Judge.

REVERSED AND REMANDED.

*N. S. Brown* and *Homer Hall* for appellant.

(1) The instruction in the nature of a demurrer to the evidence ought to have been given for the reason that there was no evidence to establish negligence on the part of defendant in any of the particulars alleged in the petition, nor in any other particular under the circumstances shown in evidence. Near v. Railroad, 261 Mo. 80, 91, 97; Current v. Railroad, 86 Mo. 62. (2)

The plaintiff knew that the car had not been inspected by the defendant and therefore he could not rely upon defendant having exercised proper care for his safety, but on the contrary, he assumed the risk of using the handhold, as a matter of law, and the demurrer to the evidence should have been given. Pryor v. Williams, 254 U. S. 43; Chicago, R. I. & P. Ry. Co. v. Ward, 252 U. S. 18; Ches. & Ohio Ry. v. De Atley, 241 U. S. 310; Ches. & Ohio Ry. v. Proffitt, 241 U. S. 462; Thompson v. Railroad, 133 Minn. 203; affirmed, 242 U. S. 623. (3) The defendant was under no duty to inspect the defective car, as it was not in its service. It had the right to assume that the Chicago, Rock Island & Pacific Railway Company, which had the car in its service, would properly inspect the cars it placed on the switch, as was its duty to do. Plaintiff, therefore, has no right to recover against the defendant, and. the court should have directed a verdict for it. Moynihan v. King's Windsor Cement & C. Co., 168 Mass. 450; Trask v. Old Colony Railroad, 156 Mass. 298; Coffee v. New York, N. H. & H. R. Co., 155 Mass. 21. (4) The testimony all showed that the defect was a hidden one, that the defendant had no notice of the defect or opportunity to discover it and therefore, it was not liable. Gutridge v. Railroad, 94 Mo. 468; 26 Cyc. 1109, 1110. (5) The fact that plaintiff is not entitled to recover against the defendant does not mean that he is without remedy against the owner of the car or the Chicago, Rock Island & Pacific Railway Company, which had the car in its service and placed it in a position to cause plaintiff's injury. Moynihan v. King's Windsor Cement, etc., Co., 168 Mass. 450; Engel v. New York, etc., Railroad, 160 Mass. 260. (6) The giving of plaintiff's instruction No. 1 was erroneous because it dircted the jury to find for plaintiff without requiring them to find that defendant was guilty of any of the specific negligence alleged in the petition. The plaintiff must recover, if at all, on the cause of action alleged in his petition. Current v. Railroad, 86 Mo. 62; Daniel v. Pryor, 227 S. W. 102;

Bergfeld v. Kansas City Rys. Co., 227 S. W. 106; State ex rel. v. Ellison, 270 Mo. 654; Degonia v. Railroad, 224 Mo. 589; Lauff v. Carpet Co., 186 Mo. App. 135; Giles v. Railroad, 278 Mo. 350; Dority v. Railroad, 188 Mo. App. 365, 174 S. W. 209; Eliot v. Railroad, 204 Mo. 1; Tinkle v. Railroad, 212 Mo. 445; Houck v. Hunter, 225 S. W. 1027. Instructions must not be broader than the evidence, no matter how broad the petition, nor shall they be broader than the petition. Gunn v. Hemphill Lumber Co., 218 S. W. 987; Parker v. Drake, 220 S. W. 1000. (7) Plaintiff's instruction 1 is erroneous because it ignores the defense of assumption of risk which is pleaded in the answer and is a valid defense. Chicago, R. I. & P. Ry. Co., v. Ward, 252 U. S. 18; Daniel v. Pryor, 227 S. W. 102; Ches. & Ohio Ry. v. De Atley, 241 U. S. 310; Jacobs v. Southern R. R., 241 U. S. 229; McIntyre v. St. Louis & S. F. Ry. Co., 227 S. W. 1047; Pryor v. Williams, 254 U. S. 43. Plaintiff's instruction 1 is erroneous because it uses the term "ordinary care" without defining it. Foy v. United Rys. Co., 226 S. W. 325; Violette v. Mitchell, 203 S. W. 218; Montgomery v. Railroad, 181 Mo. 508; Turnbow v. Dunham, 272 Mo. 53. (9) Plaintiff's instruction 2 is erroneous because it authorized and directed the jury to allow plaintiff for loss of earnings which he had suffered, without any limitation whatever on the amount, when the petition claimed only $135 for lost wages. Carney v. United Rys. Co., 226 S. W. 308; Heidbrink v. United Rys. Co., 133 Mo. App. 40; Reynolds v. United Rys. Co., 142 Mo. App. 708; Tinkle v. Railroad, 212 Mo. 445; Smoot v. Kansas City, 194 Mo. 513; Smith v. Railroad, 183 Mo. App. 180; Smart v. Railroad, 164 Mo. App. 61. (10) The court erred in refusing to give defendant's requested instruction numbered 3, for if the facts therein submitted were found by the jury, then defendant was not liable under the authorities cited under paragraphs 1, 2, 3 and 4 of this brief. (11) The verdict is excessive and the motion for a new trial ought to have been sustained for that reason. Plain-

tiff had practically recovered from the injury to his wrist, received by falling from the car, when he receiv-ed the injury to his arm and shoulder which caused the permanent injury for which the jury awarded damages. The verdict is also excessive because it evidently includes loss of earnings greatly in excess of the amount claimed in the petition. Neff v. Cameron, 213 Mo. 350; Wellman v. Ry. Co., 219 Mo. Mo. 126; Sexton v. Railroad, 245 Mo. 254; Johnson v. Brick Co., 205 S. W. 615; Brady v. Railroad, 206 Mo. 509; Gaty v. United Rys. Co., 227 S. W. 1041.

*Edward W. Foristel* for respondent.

*O. J. Mudd,* of counsel.

Appellant's bill of exceptions shows that appellant at the trial saved no exceptions to the decision of the court ruling on the giving or refusing of instructions, or overruling the motions for new trial and in arrest. There is nothing before this court, therefore, but the record proper. The petition states a cause of action, was supported by evidence, and the judgment is responsive to the pleadings. It should therefore be affirmed. 3 Corp. Jur., sec. 802, p. 895; Idem, sec. 843, p. 954; Elliot's Appellate Procedure, secs. 785 and 786; State v. Stevens, 242 Mo. 439; State v. Pfeifer, 267 Mo. 23; State v. Reed, 143 Mo. App. 583; Ross v. Railroad, 141 Mo. 390; Stauffer v. Railroad, 243 Mo. 305; Ross v. Grand Pants Co., 241 Mo. 296; Hubbard v. Gates, 228 Mo. 610; Building Co. v. Hopkins, 204 Mo. 652-3; Mexico v. Barnes, 158 Mo. App. 612; McKee v. Dry Goods Co., 152 Mo. App. 241; Waller v. Railroad, 83 Mo. 608; Fornof v. Williamsburg, 238 Pa. 614; R. R. v. Thompson, 82 Fed. 720. Nor does the act of the stenographer in noting an exception when none was really taken (although tolerated and assented to by the practice of the court), nor any rule or custom or practice of the court, dispensing with the taking and saving of

an exception at the time of the ruling, satisfy the law, 3 Corp. Jur., sec. 802, p. 898; Green v. Terminal R. R. Asso., 211 Mo. 18; Burdoin v. Town of Trenton, 116 Mo. 358; Kansas City v. Oil Co., 140 Mo. 458; Howes v. Colburn, 165 Mass. 385; Moore v. Royal Oak Lumber Co., 171 Mich. 400; Herman v. Jeffries, 4 Mont. 513; Daniels v. Ins. Co., 2 Mont. 500; Briggs v. Waldron, 83 N. Y. 582; Greer v. Greer et al., 65 N. Y. S. (58 Hun.) 251; Edmonds v. Inman, 24 S. D. 457; Kennedy & Bro. v. Cunningham, 2 N. E. T. C. 538; Christian v. John, 2 Pa. Super. 78; Lampe v. Rwys. Co., 177 Mo. App. 652.

ALLEN, P. J.—This is an action for personal injuries sustained by plaintiff while in the employ of the defendant railway company as a switchman. The petition alleges that the defendant is a common carrier engaged in interstate commerce, and that on September 3, 1916, plaintiff was in defendant's employ in the city of St. Louis, as a switchman, engaged in switching cars used by the defendant in interstate commerce, and that while performing his duties as such switchman he took hold of a handhold on the roof of a box car on which he was working, for the purpose of descending from the roof of the car, and that the handhold suddenly gave way, violently precipitating him to the ground, breaking the bones of his left arm at the wrist, bruising, contusing and lacerating him "about the arms, hands, face, head, legs and body," and causing injury to his nervous system. And it is alleged that the handhold was not bolted to the roof of the car, but was fastened thereto by means of lag screws which had been permitted to become old, worn and rusty, and that the roof thereabout was permitted to be in a rotten and decayed condition.

It is averred that plaintiff's injuries were caused by the carelessness and negligence of the defendant (1) in failing to have the handhold bolted to the roof of the car; (2) in failing to use reasonable care to provide plaintiff with a safe place on said car in which to

work, in that defendant permitted said lag screws to be and remain in an old, worn and rusted condition, and permitted the roof thereabout to be and remain in a rotten and decayed condition, when defendant knew, or by the exercise of ordinary care could have known thereof in time to have repaired the same and to have averted the injury to plaintiff, and (3) in failing to give plaintiff timely warning of the conditions aforesaid, with respect to said lag screws and the roof thereabout and that the handhold was likely to give way and cause plaintiff to be injured.

And it is alleged that as the direct result of such injury plaintiff has suffered and will suffer great pain of body and mind; "that he has lost the earnings of his labor as a switchman for a period of one and one-half month at the rate of $90 per month. amounting to $135, and that he will in the future suffer the loss of his earnings as such;" that his shoulder has been permanently weakened and his left wrist rendered permanently stiff, weak and useless, and that his nervous system has been permanetly injured and impaired, all to his injury in the sum of $10,000, for which he prays judgment.

The answer is a general denial coupled with pleas of contributory negligence and assumption of risk.

The trial, before the court and a jury, resulted in a verdict and judgment for plaintiff in the sum of $5500, from which the defendant prosecutes this appeal.

The evidence shows that at the time of plaintiff's injury he was a member of a switching crew of the defendant railway company operating a switch engine on a track, in the city of St. Louis, known as the Hawthorne track. This track, it is said, extended from Vandeventer avenue west as far, at least, as Boyle avenue, in said city. It is referred to as a "lead track," and was used jointly by the defendant and the "Rock Island." A number of "switches" led from this lead track to nearby industrial plants, one of which was the Ford Motor Car Company, and another the Linde Air Products Company situated some distance west of the Ford plant. The switch-

ing crew started from the Vandeventer yards, and proceeded west along the Hawthorne track for the purpose of getting a "Frisco car" which was standing on the "Linde Air" switch loaded with a shipment for Argentina, Arkansas. When they reached the Ford switch they found some cars, evidently three or four, which stood on or partly on the Hawthorne track. The crew thereupon "coupled on" to these cars and pushed them west to the Linde Air switch. Among these cars was an empty "Grand Truck Pacific car"—the car from which plaintiff subsequently fell—which had been in the Rock Island service, having been used to transport a shipment from without the state to the Ford plant, and which had apparently been unloaded the day prior to plaintiff's injury. When the crew reached the Linde Air switch, with the cars which they had thus "picked up," they coupled onto some cars on that track for the purpose of getting out the Frisco car mentioned above. There were two or three cars on that switch in front of the Frisco car, and it was necessary to pull out these cars as well as the Frisco car. This was done and the Frisco car was placed upon a "side track." Thereupon the crew proceeded to return to the Linde Air switch the two or three other cars which had been thus removed therefrom. While this switching was in progress it was necessary, on account of the surroundings, for plaintiff to go upon the top of the cars to relay signals to the engineer. For that purpose he went upon this Grand Truck Pacific car, which was equipped with a ladder and a handhold upon the roof thereof, near the top of the ladder. When he had finished his duties on the top of the car, he received a signal to "cut off" the cars that were to be left on the Linde Air switch. In attempting to descend he took hold of the handhold in the roof, which gave way, causing him to fall to the ground, whereby he was injured.

The evidence shows that the handhold which thus gave way, was not bolted to the roof of the car, but was fastened by lag screws, and that it was not se-

cure, the lag screws having become old and worn and the roof thereabout decayed and rotten.

At the trial plaintiff introduced orders of the Interstate Commerce Commission, of date March 13, 1911, made pursuant to authority conferred upon it by Section 3 of Safety Appliance Act approved April 14, 1910, supplementing the Act of 1893, as previously amended. [See Sec. 8619, U. S. Comp. Stat. 1913.] One of those orders provides that "roof-handholds shall be securely fastened with not less than one-half inch bolts with nuts outside (when possible) and riveted over, or with not less than one-half inch rivets;" and another provides that the period of time within which common carriers, subject to the act, shall comply with the provisions of said section 3 thereof, "in respect to the equipment of cars in service on the 1st day of July, 1911," shall be extended for a period of five years from July 1, 1911. A further order of the Interstate Commerce Commission, introduced by plaintiff, of date November 2, 1915, further extended the time for complying with the provisions of said section 3 of the act, for a period of twelve months from July 1, 1916.

Further reference will be made to some portions of the evidence in the course of the opinion.

The assignments of error are to the refusal of the court to give a peremptory instruction offered by defendant at the close of plaintiff's case and again at the close of all the evidence in the case, to the giving of plaintiff's instructions numbered 1 and 2, and to the refusal to give defendant's instruction No. 3.

I.

At the outset the question is presented, discussed at much length in respondent's brief, whether there are any exceptions here for review. This question arises because of a statement inserted at the end of the bill of exceptions by the trial judge above his signature to the bill. From an affidavit of defendant's counsel, appearing in the bill of exceptions, it may be inferred that

plaintiff's counsel refused to approve the bill prepared by appellant's counsel. Following this affidavit, and immediately above the signature of the trial judge, appears the following:

"For the sake of accuracy and to avoid any possible misunderstanding, the court wishes to make the following statement a part of this bill of exceptions:

"On page 76 it is stated that the defendant, by its counsel, then and there excepted to the giving of the instructions for plaintiff.

"And on page 79 it is stated that the defendant, by its counsel, then and there duly excepted to the refusal of the court to give the instructions marked numbers 2 and 3, requested by the defendant.

"And on page 82 the statements appear that the defendant, by its counsel, excepted to the action of the court in overruling defendant's motion for a new trial, and also excepted to the court's action in overruling the motion of defendant in arrest of judgment.

"The court wishes to state that the defendant's counsel did not in fact make objections to the giving of instructions for plaintiff, or the refusal of instructions requested by the defendant, and then and there; that is, at the time of the giving and refusing of said instructions, except to the court's action in the matter, but the stenographer, in making up the transcript, followed the course and practice prevailing in this court for many years of noting an objection on the part of the losing party to the giving of instructions asked by the other side and the refusal of instructions asked by him, and further, noting an exception to the action of this court in giving and refusing such instructions.

"And so with relation to the action of the court in overruling the defendant's motions for new trial and in arrest of judgment. The defendant was not present in court at the time the court announced its decisions on these motions, was not notified that the decisions would be rendered on that day, nor did its counsel, on that day or at any time, openly announce in court that he ex-

cepted to the ruling of the court in these particulars, but the exception was written into the record by the stenographer in pursuance to a long-existing practice in this court. It has been the practice in this court for many years to have the official stenographer, in making out the bill of exceptions, to note an exception on behalf of the unsuccessful party, to the giving of all instructions asked by his adversary and the refusal of all instructions asked by him, and to the overruling of his motion for new trial and in arrest, although such exceptions were not actually saved by the party's counsel stating to the court at the time of the rulings that he excepted thereto, it being the understanding at the bar that it was assumed that the parties objected to the giving and refusal of instructions and the granting or overruling of a motion for new trial or in arrest of judgment, and that the rulings of the court on these matters was taken as excepted to, even though counsel, as a matter of fact, did not actually state that he objected to the giving and refusal of instructions, or excepted to the ruling of the court in giving or refusing them, or in sustaining or overruling motions for new trial and in arrest.

"It is in pursuance of said practice that the court now signs this bill of exceptions containing the statements hereinabove referred to, to the effect that defendant, by its counsel, had then and there duly excepted to its action in giving and refusal of instructions, and in overruling the motions for new trial and in arrest of judgment."

Because of this recital in the bill of exceptions it is argued here by respondent that the bill of exceptions shows that appellant saved no exceptions to the rulings below as to the giving and refusing of instructions, or to the overruling of defendant's motions for new trial and in arrest; and that therefore there is nothing before this court for review but the record proper.

It is undoubtedly the law that in order that any ruling below, which is a matter of exception, may be reviewed on appeal, the record, i. e. the bill of exceptions

duly made a part of the record, must show an exception saved at the time to such ruling. However technical and absurd it may appear to be in practical application, the rule of law is inexorable and binding upon us, that only such exceptions are available on appeal as were actually saved at the time of the rulings complained of. A long array of authorities to this effect might be cited, but the following will suffice; State v. Pfeiffer, 267 Mo. 23, l. c. 29, and cases cited, 183 S. W. 337; Ross v. Grand Pants Co., 241 Mo. 296, 145 S. W. 410; Building Co. v. Hopkins, 204 Mo. 643, 103 S. W. 66; State v. Reed, 143 Mo. App. 583, 128 S. W. 4; Ross v. Railroad, 141 Mo. 390, 38 S. W. 926, 42 S. W. 957, McKee v. Dry Goods Co., 152 Mo. App. 241, 132 S. W. 1191.

The bill of exceptions before us duly recites the saving of exceptions, at the time, to the giving of plaintiff's instructions complained of, to the refusal of the court to give defendant's peremptory instruction and its instruction No. 3, and to the overruling of defendant's motions for a new trial. But we are confronted with the question whether effect is to be given to the statement of the trial judge, written by him into the bill of exceptions before signing the same, that the aforesaid exceptions, purporting to have been duly saved at the time of the said rulings, were not in fact so saved.

Respondent urges that the requirement that exceptions be saved at the time of the rulings complained of cannot be satisfied or obviated by a rule or custom of the trial court purporting to dispense with the necessity of timely saving exceptions to adverse rulings. Unquestionably this is the law in this State. [See Green v. Terminal Railroad Association, 211 Mo. 18, 109 S. W. 715; Reed v. Colp, 213 Mo. 557, 112 S. W. 255.] [See, also, 3 Corpus Juris, sec. 803, p. 898.] That is to say, if the appellate court has before it a bill of exceptions which does not show the saving of any exceptions, at the time, to rulings complained of on appeal, i e. rulings constituting matters of exception, the fact that it may appear from a record of the proceedings below,

as shown by such bill, that there was a rule of court or custom to the effect that exceptions were presumed to be saved to adverse rulings, will not suffice, to supply the exceptions and permit a review of such rulings. Under such circumstances the existence of a rule or custom that exceptions were presumed to be saved, or, in effect, would automatically save themselves, would be of no moment whatsoever on appeal; and the case would stand in the appellate court without exceptions to such ruling. [See Green v. Terminal Railroad Co., supra.] And such rule or custom would not suffice as the basis for a *nunc pro tunc* amendment of the bill to supply such exceptions. [Reed v. Colp, supra.]

But such is not the situation which here confronts us. In the instant case we have a bill of exceptions reciting that the exceptions in question were in fact saved at the time of the rulings which appellant seeks to have us review. And this bill of exceptions was in fact signed by the trial judge. Consequently such exceptions are here, unless it be that they are, in effect, removed from the bill by reason of the fact that the trial judge, when he came to sign the bill, inserted therein, above his signature the statement set out above, reciting that the exceptions in question were not saved at the time of the rulings but were subsequently inserted by the official stenographer pursuant to the custom mentioned. Resspondent takes this statement as having the effect of nullifying the recitals of the bill regarding the saving of these exceptions. But a consideration of the matter has led us to the conclusion that this view is not sound. The duty and authority of a trial judge with respect to the signing and allowing of bills of exceptions are definitely prescribed and limited by our statutes. Section 1459, Revised Statutes 1919, provides as follows:

"Whenever, in the progress of any trial in any civil suit pending in any court of record, either party shall except to the opinion of the court, and shall write his exception and pray the court to allow and sign the same,

the person composing the court shall, if such bill be true, sign the same.''

As above said, the law contemplates that exceptions shall be saved at the time of the rulings complained of; but it is the duty of the appellant thereafter, in due season, to reduce such exceptions to writing, i. e. to incorporate them into a bill of exceptions and pray the court to allow and sign the same. Then, under the statute, supra, it becomes the duty of the trial judge, if the bill be true, to sign it. On the other hand, section 1461, Revised Statutes 1919, provides:

''If the judge refuses to sign such bill on the ground that it is untrue, he shall certify thereon under his hand the cause of such refusal.''

In other words, when a bill of exceptions is presented to a trial judge, it is his duty to sign it if he deems it a true bill, but if he deems it untrue, then it is his duty to refuse to sign it, certifying thereon, under his hand, his cause for such refusal. Such is the positive mandate of the statute. His duty is to do one thing or the other, viz., to sign the bill or to refuse to sign it, in the latter event certifying his reasons for such refusal. The statute confers no authority upon him for pursuing any other or different course. Nowhere, directly or indirectly, may any authority be found in the statutes for the inserting by the trial judge into a bill of exceptions of a statement giving his reasons for signing a bill, or commenting upon the same, or any part thereof. And we think that any such unauthorized recital or statement, thus attempted to be injected into a bill of exceptions by the trial judge, must perforce be treated as a nullity and disregarded on appeal.

In the case before us we have an anomalous and utterly absurd situation, namely, a bill of exceptions *signed* by the trial judge, with the attempt on his part to overthrow certain recitals thereof by inserting a statement therein above his signature. Such statement has no place in the bill. It does not purport to be the record of any proceedings which took place in the progress of the case below, but is a mere extra judicial statement

of the trial judge, to which, we think, no effect whatsoever can be given.

We are bound to treat this bill of exceptions as being a true bill, authenticated by the signature of the trial court, or to treat the unauthorized statement of the trial court as, in effect, striking down the bill, leaving the appellant here without exceptions to adverse rulings. To pursue the latter course would be to sanction a practice which has no authority in law, is contrary to the statute, and which would tend to utter confusion. And if a trial judge is thus permitted to emasculate a bill of exceptions presented to him for his signature, and then sign it, instead of refusing to sign it as being untrue, then the appellant is deprived of his statutory right to have his bill signed by bystanders.

We therefore hold that the exceptions in question are here, and that consequently the rulings below of which appellant complains are before us for review.

## II.

Of the ruling below upon the demurrer to the evidence:

It is undisputed that defendant was engaged and plaintiff employed in interstate commerce at the time of plaintiff's injury; though this is not material, since the scope of the Safety Appliance Act, as amended, and as supplemented by the Act of April 14, 1910, (Secs. 8605-8650, U. S. Comp. Stat.) embraces all cars used on any railway that is a highway of interstate commerce. [See Texas & Pacific Ry. Co. v. Rigsby 241 U. S. 33; Southern Ry. v. United States, 222 U. S. 38.] And it was shown in evidence that the defendant railway company "is engaged in handling freight to the various States, and owns and operates lines of railroad through several States over which commerce is carried back and forth."

Section 2 of the Act of April 14, 1910, (Secs. 8618, U .S. Comp. Stat. 1913) provides as follows:

"On and after July first, nineteen hundred and eleven, it shall be unlawful for any common carrier sub-

ject to the provisions of this Act to haul, or permit to
be hauled or used on its line any car subject to the pro-
visions of this Act not equipped with appliances provid-
ed for in this Act, to wit:  .  .  .  all cars requiring
secure ladders and secure running boards shall be equip-
ped with such ladders and running boards, and all cars
having ladders shall a!so be equipped with secure hand-
holds or grab irons on their roofs at the tops of such
ladders.''

The evidence adduced showed beyond dispute that
the handhold here in question was not *secure* as require-
ed by the act.  And it is settled beyond controversy that
if the equipment is in fact defective, in violation of the
act, the question whether this is attributable to the car-
rier's negligence is immaterial.  [See Callicotte v. Rail-
road, supra, 1. c. 693, and authorities cited.]  A posi-
tive duty is imposed by the statute upon carriers, sub-
ject to the act, to furnish safe appliances in the way of
handholds.  [Texas & Pacific Ry. Co. v. Rigsby, supra;
Minn. & St. Louis R. R. Co. v. Gotschall, 244 U. S.
66; Callicotte v. Railroad, 274 Mo. 689, 204 S. W. 529.]
And a violation of such duty *per se*, casts liability upon
the carrier.

It may be noted that the petition herein avers that
the alleged defective condition of the handhold on the
roof of this car resulted from defendant's negligence.
However, the petition states facts to bring the case with-
in the Safety Appliance Act, supra; and if the evidence
tends to establish a violation of the provisions of that
act, then the allegations of negligence in the petition may
now be treated as surplusage.  [Callicotte v. Rock Island
Ry. Co., supra.]

Nor is defendant's liability, under the act, affected
by the fact that the Grand Truck Pacific car from which
plaintiff fell did not belong to it, and was not being
used by it at the time for the purpose of transporting
a shipment therein, but was picked up by this switch-
ing crew and utilized temporarily for the purpose of en-
abling the crew to reach and remove the Frisco car.  By

section 1 of the amendment of 1903 to the Safety Appliance Act, the provisions and requirements thereof and of the Act of 1893 were made to apply to "all trains, locomotives, tenders, cars and similar vehicles used o'' any railroad engaged in interstate commerce. [See Sec. 8613, U. S. Comp. Stat. 1913.] And section 2 of the Act of April 14, 1910, quoted above, makes it unlawful for any carrier, subject to the act, "to haul, or permit to be hauled or used on its line" any car not equipped with appliances provided for in the act.

The point is made that by the orders of the Interstate Commerce Commission in evidence the time allowed for complying with the requirements of the Safety Appliance Act was extended, as to cars in service at the time of the passage of the Act of April 14, 1910, for a period extending beyond the day of the casualty here in question; and appellant points to certain testimony in the record tending, it is said, to show that the car from which plaintiff fell was in service on said day.

Section 3 of the Act of April 14, 1910. (Sec. 8619, U. S. Comp. Stat. 1913), authorizes the Interstate Commerce Commission to "designate the number, dimensions, locations and manner of application" of the appliances provided for by section 2 of the Act. And the proviso to said section 3 provides that the Commission may extend the period within which any common carrier shall comply *with the provisions of that section,* with respect to the equipment of cars actually in service on the date of the passage of the Act. Having made certain orders designating the number, dimensions, location and manner of application of appliances provided for by section 3, including the order that handholds be fastened by bolts, the Commission extended the time for complying therewith for a period extending to July 1, 1917; and the casualty herein question occurred on September 3, 1916. The Commission, however, had no authority, nor did it undertake to extend the time for complying with the positive requirements of said Section 2. [See Illinois Central R. R. Co. v. Williams, 242

U. S. 462.]   Defendant's liability attaches in the instant case, because of a violation of section 2 of the Act of April 14, 1910, supra, in using a car having a ladder, but which was not equipped with a secure roof-handhold.   Defendant was not, however, liable for failure to have the handhold bolted to the roof of the car. And it may be noted, in this connection, that plaintiff's instructions to the jury did not predicate liability upon a failure to have the handhold so fastened.

We think that the trial court did not err in refusing defendant's peremptory instruction.

### III.

It is urged that plaintiff's instruction No. 1, plaintiff's main instruction covering the case and directing a verdict, is erroneous because it authorized a finding for plaintiff without requiring the jury to find that plaintiff was guilty of any of the specific acts of negligence alleged in the petition.   But, as said above, the allegations of negligence in the petition may be treated as surplusage.   In so far as the negligence alleged was submitted by plaintiff's instruction No. 1, plaintiff assumed an unnecessary burden.   [Callicotte v. Rock Island R. R. Co., supra.]   And it is of no consequence that the instruction failed to submit other acts of negligence alleged.

Nor is plaintiff's instruction No. 1 erroneous in ignoring the defense of assumption of risk, for if the defendant was guilty of a violation of the Safety Appliance Act, plaintiff did not assume the risk arising therefrom.   [See Sec. 8 of the Act of March 2, 1893; Sec. 8612, U. S. Comp. Stat. 1913.]

### IV.

Plaintiff's instruction No. 2, on the measure of damages, told the jury that if they found for plaintiff to assess his damages at such sum as they might find and believe from the evidence would be a fair compensation to him; "for loss of earnings of his labor, if any,

which the plaintiff has suffered by reason of his injuries, if any, and directly caused thereby, and for loss of earnings of his labor in the future, if any, which the jury find from the evidence he is reasonably certain to suffer, by reason of his injuries, if any, and directly caused thereby.''

As shown above, plaintiff was injured on September 3, 1916. This suit was instituted on November 12, 1917, more than fourteen months after the date of the injury; and the petition alleged that plaintiff had then lost the earnings of his labor as a switchman for one and a half months, at $90 per month, amounting to $135; alleging that he would in the future ''suffer the loss of his earnings as such (switchman).''

This instruction erroneously fails to limit the recovery for past loss of earnings to the amount alleged in the petition. [See Smoot v. Railroad, 194 Mo. 1. c. 523, 92 S. W. 363; Tinkel v. Railroad, 212 Mo. 471, 110 S. W. 1086; Radtke v. Basket & Box Co., 229 Mo. 1, 1. c. 18, 129 S. W. 508; Heinz v. United Rys. Co., 143 Mo. App. 38, 122 S. W. 346.] And under the circumstances this appears to be reversible error. It cannot be held that the instruction is good in its general scope, and that the giving thereof was not reversible error since defendant did not offer a limiting instruction, as held in State ex rel. v. Reynolds, et al., 257 Mo. 19, 165 S. W. 729; King v. St. Louis, 250 Mo. 501, 157 S. W. 498; Browning v. Railroad, 124 Mo. 55, 27 S. W. 644, and other cases of like character. Here the petition definitely charged (and thereby admitted) that at the time of the filing thereof—more than fourteen months after the date of the injury—plaintiff had lost his earnings for but one and one-half months, while the instruction permitted a recovery for past loss of earnings from the date of the injury to that of the trial.

But this is not the only fault to be found with the giving of this instruction. The instruction allows a recovery for the loss both of past and future earnings, without any testimony as to the extent of such loss. What earnings plaintiff had actually lost, as a result of his

injury, up to the date of the trial (December 12, 1918)
was a matter peculiarly within his knowledge; and testi-
mony concerning the same would, of course, have cast
light upon the question of his loss of earnings in the
future, if any. But plaintiff gave no testimony as to
what earnings he had actually lost. He testified that
after receiving his injury he went to a hospital where he
remained long enough to have his arm banaged—about
two hours; that subsequently he visited the physician who
had bandaged his arm "once or twice a week for eight
months," that the physician put "two braces around each
side," which were kept on two months; and that there
was little change in his hand during the first few months.
His further testimony in this connection is as follows:
"It has not improved any in the last year. I haven't
got very much of a grip in my hand. I have tried many
a time to hold things in my hand. I can hold just a little,
not much. I could not do the work as a switchman with
that hand. I then made about $115 a month or $120.
It depends on the overtime. It depends on the amount of
time I put in."

Plaintiff was not questioned on cross-examination
regarding his loss of earnings; and the foregoing is the
only testimony touching the matter, beyond the state-
ment of a witness, a member of this switching crew, to
the effect that plaintiff had not worked as a switchman
since his injury so far as the witness knew. It will
be noted that plaintiff nowhere states what work, if any,
he had been engaged in subsequent to the time of the
injury, what time, if any, he had lost as a result of the
injury or what occupation, if any, he was engaged in at
the time of the trial. Consequently a recovery for past
and future loss of earnings, without limitation, is made
to depend solely upon the testimony that plaintiff, after
the injury, could not perform the work of a switchman,
and that the wages of a switchman were about $115 or
$120 per month. This evidence, we think, did not war-
rant the giving of this instruction. "When the damages
are susceptible of proof with approximate accuracy, and

may be measured with some degree of certainty, they should not be left to the guess of the jury, even in actions *ex delicto.*'' [Duke v. Railroad, 99 Mo. 347, l. c. 351, 352, 12 S. W. 636; Slaughter v. Railroad, 116 Mo. 269, l. c. 276, 23 S. W. 760; Ingles v. Railroad, 145 Mo. App. 241, l. c. 247, 129 S. W. 493.]

The case is not one where the verdict is a modest or scanty award for the undisputed damages suffered, and no complaint is made of an excessive verdict, and where, under all of the circumstances present the giving of a faulty instruction on the measure of damages may be regarded as nonprejudicial error [See Shinn v. Railways Co., 248 Mo. 173, 164 S. W. 103.] On the contrary, the verdict is a very substantial one; to what extent plaintiff's condition, at the time of the trial, was due to his fall from the car, is a matter in dispute; and it is earnestly urged that the verdict is excessive.

The evidence shows beyond dispute that, at the time of the trial, plaintiff's hand was in a weakened condition. A physician called by plaintiff, who had not previously treated him but who examined him the day prior to the trial testified that as a result of the fracture of the left wrist, the motion of the wrist was imperfect; that plaintiff could not close his fingers, and there was some thickening at the side of the fracture, the ligaments thereabout having become so inflamed that they did not allow the hand to close. He said that the strength of the hand had materially decreased; that in his opinion the injury was permanent, and that after such lapse of time the condition had become chronic, and nothing would improve it.

Plaintiff, on cross-examination, admitted that about nine months after the injury here in question, to-wit, in May, 1917, he was injured by being struck by a runaway horse, upon which occasion his left shoulder was broken. He said that the injury did not result in a stiff shoulder; that his shoulder was ''all right,'' though ''not quite as strong as it was before.'' Defendant, however, called the physician who treated plaintiff at the time of said injury. He testified that he found the fracture of plain-

tiff's left wrist then practically healed, and the union good, though the wrist was still somewhat stiff; that plaintiff had a fresh injury to his left shoulder; that the head of the arm bone, the humerus, was broken off and dislocated, the condition being what it termed a "fractured dislocation;" that he "found it necessary to open up the joint, take out those broken pieces of bone, and on account of the whole upper end of the main bone being crushed, there was nothing left to fasten it to," and he found it necessary to remove "that piece of bone." He further testified that "on account of the removal of the bone it gives the muscles nothing to act against as a fulcrum, and the whole shoulder is naturally weak and . . . there was more or less atrophy of the muscles about that part." And he said: "It has lessened the strength of the whole arm, and the strength of the hand is useless unless it can be transmitted through the arm. Furthermore, . . . this broken bone had undoubtedly injured some of the nerves because he had some trouble with the nerves after that."

Under these circumstances the giving of this instruction cannot be held to be non-prejudicial or harmless error. And the error cannot be cured by *remittitur*, since there is no way to determine the amount allowed by the jury on account of past and future loss of earnings.

Complaint is made of the refusal of defendant's instruction No. 3, but this contention is fully disposed of by what we have said above in passing upon the ruling on the demurrer to the evidence.

·For the error in giving plaintiff's instruction on the measure of damages, the judgment should be reversed and the cause remanded. It is so ordered.

*Becker, J.,* concurs. *Daues, J.,* not sitting.