[S. F. No. 15448. In Bank.—August 7, 1936.]

WILLIAM W. SCARLETT, Respondent, v. ATCHISON, TOPEKA AND SANTA FE RAILWAY (a Corporation), Appellant.

Robert Brennan, Leo E. Sievert and H. K. Lockwood for Appellant.

James F. Hoey, Clifton Hildebrand, Warren Cunningham, Louis E. Goodman, Louis H. Brownstone, Werner, Martin & Hildebrand and Thomas F. McCue for Respondent.

THE COURT.—In this case a rehearing was granted to give consideration to appellant's several contentions questioning the soundness of the holding of this court.

A further review of the cause leads us to adhere to the conclusions already announced and our former opinion, written by Mr. Justice Seawell, is hereby adopted as a part of this decision. It reads:

"Plaintiff recovered judgment against defendant Atchison, Topeka and Santa Fe Railway, a corporation, for $18,000 damages for personal injuries received by him in the course of his employment by said defendant as a brakeman. Defendant appeals from the judgment.

"The accident took place on August 27, 1931, at Mormon, California. Plaintiff had been upon the top of the rear car of a cut of freight cars in the course of his employment, and was descending the ladder on the side of the car when his foot slipped and he fell to the ground. He received serious injuries, including the fracture of bones of his left wrist. It became necessary to remove certain of the bones of the wrist, with the result that plaintiff has suffered a permanent disability to his left hand, wrist and arm, which prevents his continuance in employment as a railroad brakeman.

"The ladder from which plaintiff fell is located on the side of the car, within a few inches from the end of the car. Back of the ladder, in a diagonal position, is a round metal rod, which serves to brace the end and side of the car. Plaintiff attributed his fall to the presence of this diagonal brace rod. He testified that as he descended the ladder his foot came in contact with the diagonally placed round brace rod, instead of the horizontal ladder rung, causing him to lose his footing and fall to the ground. At the time plaintiff fell, the train was moving at a speed of about two miles an hour. It is his contention that the presence of this round bar rendered the ladder insecure, in violation of pro-

visions of the Federal Safety Appliance Act of 1910. (36 U. S. Stats. at L., p. 298; U. S. C. A., title 45, secs. 11–16.) ▮ Where an injury is proximately caused by a condition existing in violation of any of the several safety appliance acts of Congress, including the Boiler Inspection Act (36 U. S. at L., p. 913; U. S. C. A., title 45, secs. 23, 24), the carrier is absolutely liable therefor, although it is ignorant of the defect and has used ordinary care to maintain its equipment in the required condition. (*St. Louis Iron Mountain & S. Ry. Co.* v. *Taylor*, 210 U. S. 281, 294 [28 Sup. Ct. 616, 52 L. Ed. 1061]; *Baltimore & Ohio R. R. Co.* v. *Groeger*, 266 U. S. 521, 527 [45 Sup. Ct. 169, 69 L. Ed. 419]; *Illinois Central R. R. Co.* v. *Williams*, 242 U. S. 462, 466 [37 Sup. Ct. 128, 61 L. Ed. 437]; *Texas & Pacific Ry.* v. *Rigsby*, 241 U. S. 33, 43 [36 Sup. Ct. 482, 60 L. Ed. 874]; *United States* v. *Chicago, St. P., M. & O. Ry.*, 43 Fed. (2d) 300, 302 [71 A. L. R. 507].) The effect of said acts is to substitute an absolute liability for the common law liability based on negligence. Not only is the liability absolute, but by express statutory provision the defenses of assumption of risk and contributory negligence are eliminated. (27 U. S. Stats. at L., p. 532; U. S. C. A., title 45, sec. 7; 35 U. S. Stats. at L., p. 66; U. S. C. A., title 45, secs. 53 and 54; *Great Northern Ry. Co.* v. *Donaldson*, 246 U. S. 121 [38 Sup. Ct. 230, 62 L. Ed. 616, Ann. Cas. 1918C, 581]; *Texas & Pac. Ry.* v. *Rigsby, supra; Ballard* v. *Sacramento N. Ry. Co.*, 126 Cal. App. 486, 490 [14 Pac. (2d) 1045, 15 Pac. (2d) 793].) ▮ Where the action is not predicated upon a violation of safety appliance acts, but on common law negligence not constituting a violation of said acts, the defense of assumption of risk is permitted, and as to contributory negligence the statute provides that damages shall be diminished by the jury in proportion to the amount of negligence attributable to the employee. (U. S. C. A., title 45, sec. 53; *Erie R. Co.* v. *Lindquist*, 27 Fed. (2d) 98.)

"In the instant case the plaintiff bases his claim to recover on a violation of the provisions of the Safety Appliance Act of 1910 to the effect that 'all cars requiring secure ladders and secure running boards shall be equipped with such ladders and running boards'. (36 U. S. Stats. at L., p. 298; U. S. C. A., title 45, sec. 11). He relies solely on the presence of the round diagonally placed bar behind the

ladder, which, he contends, rendered it insecure in violation of the act. On the trial he expressly waived any rights of recovery he might have based on common-law negligence independently of the above-quoted provision of the Safety Appliance Act. Accordingly the trial court sustained plaintiff's objection to evidence by which defendant sought to show assumption of risk.

"By virtue of section 3 of the Safety Appliance Act of 1910, *supra,* the interstate commerce commission has authority to designate 'the number, dimensions, location, and manner of application of the appliances' provided for by the act. The carrier is subject to a penalty of $100 for permitting any car to be hauled on its line not equipped as provided in the act. (Sec. 4.) By virtue of the authority vested in it by congress, the commission has specified certain requirements for ladders, including a specification for clearance as follows: 'Minimum clearance of treads, two (2), preferably two and one-half (2½) inches.' It is admitted herein that there is a space of 2¾ inches between the outside of the round diagonal bar and the inside of the ladder rungs.

"Defendant contends that in view of this 2¾ inches clearance it must be held as a matter of law that the ladder was 'secure'; that the interstate commerce commission is entrusted by congress with authority to determine the requirements for safety appliances, and an appliance cannot be held insecure or unsafe in a respect in which it fully complies with the commission's rules.

"Respondent contends that the rules of the commission merely establish minimum requirements; if an appliance fails to comply with a rule of the commission, it must as a matter of law be held insecure or unsafe, but it does not follow that because it conforms to the rule that it is safe or secure; the statute requires a secure. ladder, meaning a safe ladder, and it is for the jury to determine whether a ladder conforming to rules of the commission is secure. Respondent further contends that if compliance with a rule as to a particular matter renders the appliance 'secure' as a matter of law in that regard, nevertheless where the insecurity lies in a detail as to which the commission has no rule, it is for the jury to say whether the appliance is secure. Applying this argument to the instant case, respondent con-

tends that the rule of the commission providing for a clearance of 2–2½ inches for ladders contemplates clearance between the flat side of the car and the ladder, and does not authorize the introduction into the clearance space between car side and ladder (even though it is greater than 2½ inches) of a round bar standing out from the side of the car and diagonally placed behind the ladder in such manner as to create a hazard to employees in using it. It has been held that 'secure' means more than firmly fastened; it means safe for use in the purpose for which it is intended. (*Davis* v. *Reynolds*, 280 Fed. 363, 366.)

"We are of the view that respondent can succeed herein only if the rule as to clearance was not intended to cover the situation shown by the facts herein. If the rule applies, it must be held that the ladder is 'secure'. Respondent's contention that the rules of the commission prescribe mere minimums, although it finds support in *Western & A. R. R.* v. *Meister*, 37 Ga. App. 570 [140 S. E. 905], is contrary to the weight of authority and to better reasoning. The commission has facilities to conduct expert investigation and inquiry as to safety appliances which a jury deciding a single case lacks. Under the act of 1910, the specifications of the commission 'shall remain as the *standards* of equipment to be used on all cars subject to the provisions of this Act'. In view of the fact that violation of the statutory duty to provide safe and secure equipment and appliances is attended with absolute liability, and not dependent on failure to exercise due care to provide safe equipment, as was the common-law liability, it is of importance to the carrier to know in an exact manner what it can do to discharge this duty. The rules of the commission prescribe the 'standards' of equipment, and where the carrier has complied exactly with a rule of the commission, its equipment cannot be held insecure in that regard.

"In the standardization itself there is an element of safety. In *Illinois Central R. Co.* v. *Williams*, 242 U. S. 462, 466 [37 Sup. Ct. 128, 61 L. Ed. 437], the Supreme Court stated that it was the purpose of the safety appliance acts to make the appliances ultimately conform to a standard to be prescribed by the commission, in order that uniform appliances should be found in the same place by

employees who work always in haste, and often in darkness and storm.

"In *Lancaster & Wight* v. *Allen,* 110 Tex. 213 [217 S. W. 1032], it was contended that the flange of a locomotive wheel had become worn to such an extent that the locomotive was 'not in proper condition and safe to operate' under the Boiler Inspection Act. (36 U. S. Stats. at L., p. 913; 38 U. S. Stats. at L., p. 1192; U. S. C. A., title 45, secs. 23 et seq.) It was held that if the flanges had not become worn to the extent prescribed with particularity by a rule of the commission in defining defective flanges, the railroad could not be held guilty of negligence in that regard. To the same effect are: *Lehigh & N. E. R. Co.* v. *Smale,* 19 Fed. (2d) 67; *Mahutga* v. *Minneapolis, St. P., S. S. M. Ry. Co.,* 182 Minn. 362 [234 N. W. 474]; *Auscwitz* v. *Wabash Ry. Co.,* 346 Ill. 190 [178 N. E. 403]. It might be that if the commission made a rule which so palpably tended to endanger the safety of employees that reasonable minds could not differ as to its effect, it would not be binding. The authority vested in the commission is to make regulations which will promote safety. But it is not to be contemplated that the commission will abuse its authority.

"This brings us to respondent's second contention, that the commission's rule as to 2–2½ inches clearance for ladders was not intended to govern the situation where the clearance space between car side and ladder, although greater than 2½ inches, contains a hazardous diagonally placed round brace rod. Where the commission has not made a rule in regard to a particular matter, the test is whether the appliance is safe or secure within the meaning of the statute, and this question is properly submitted to the jury. It should not be held that because the commission has failed to regulate a particular matter, that the carrier is relieved from the liability imposed by statute to supply an appliance which is secure and safe as to that detail. By sections 3 and 4 of the act of 1910 (36 U. S. Stats. at L., p. 298), a penalty is provided for failure to comply with the act, and not only for violations of rules promulgated by the commission. This conclusion is fortified by decisions interpreting another provision of the act. Section 3 provided that the commission should make rules within six months, but that it might extend the period

within which any carrier should comply with respect to equipment in service when the act was passed. It was held that although the commission might extend the time for compliance with its rules, there was a duty to supply 'secure' appliances from the effective date of the act, and the commission could not extend the time for compliance with this mandate. (*Illinois Central R. Co.* v. *Williams*, 242 U. S. 462 [37 Sup. Ct. 128, 61 L. Ed. 437]; *Tyon* v. *Wabash Ry. Co.*, 207 Mo. App. 322 [232 S. W. 786].) As to injuries occurring before the rules became effective, the question was whether the appliance was 'secure'. The same question is now presented when there is a claim of insecurity as to a matter not regulated by rule of the commission. The act of 1910 became effective July 1, 1911. The commission extended the date for compliance with its rules to a date more than five years later.

"In *Baltimore & O. R. Co.* v. *Groeger*, 288 Fed. 321, the court said: 'While the Interstate Commerce Commission is authorized to make rules and orders in furtherance of the enforcement of this law [the Boiler Inspection Act] nevertheless its failure to make a rule or an order covering every defective condition or construction within the meaning of section 2 of the Boiler Inspection Act by no means relieves the carrier from complying with the provisions of that section.' This language is equally applicable to the Safety Appliance Act of 1910. The Boiler Inspection Act (36 U. S. Stats. at L., p. 913) requires the appliance subject thereto to be 'in proper condition and safe to operate in the service to which the same are put'. The Safety Appliance Act of 1910 requires ladders to be 'secure', which has been interpreted to mean safe for the use to which they are to be put. (*Davis* v. *Reynolds, supra.*) The Supreme Court reversed the Groeger case for certain error in instructions (266 U. S. 521 [45 Sup. Ct. 169, 69 L. Ed. 419]), but it expressly recognized that as the commission had not regulated completely the matter as to which it was claimed the equipment was defective, there was a question for the jury as to whether the boiler was in proper and safe condition. (See, also, *Gerow* v. *Seaboard Airline Ry.*, 189 N. C. 813 [128 S. E. 345]; *Davis* v. *Reynolds, supra; Pennell* v. *Philadelphia & Reading Ry. Co.*, 231 U. S. 675 [34 Sup. Ct. 220, 58 L. Ed. 430].)

■ ''The jury viewed a freight car with a ladder of the construction shown in the instant case. Photographs of ladders of this type, and of other ladders appear in the record. We are of the view that the jury was justified in its decision that this bar constituted a hazard which rendered the ladder insecure, unless it must be held that the clearance rule of the commission legalizes the position of the bar.

''The distance from the side of the box car to the inside of the diagonal brace rod is ⅞ of an inch; the diameter of the rod is 1⅛ inches; the distance from the outside of the diagonal brace rod to the inside of the rungs of the ladder is 2¾ inches. The rule of the commission is simply: 'Minimum clearance of treads, two (2), preferably two and one-half (2½) inches.' The rule of the commission contains no reference to bracing, which in some type is generally found on the side of freight cars at the end in a position behind the side ladder. On wooden cars a brace of some type is needed to protect the car because the greatest strain and stress is at the ends of the car. Diagonal braces consisting of flat pieces of metal, several inches in width and bolted to the side of the car, and diagonally placed 'U' shaped metal braces, the bottom of the 'U' being bolted to the side of the car, are used by other railroads and were used by defendant until it adopted the round rod type of brace in 1929. The defendant is the only railroad using a brace of this precise type, and it has a large number of cars so braced in use. According to witnesses for defendant, braces of the flat or 'U' type may buckle in use, which renders them useless as a brace and reduces the clearance between car side and ladder, with the result that the car must be sent to the shop.

''The rules of the commission pertaining to ladders were adopted in 1911, including the clearance provision. The type of construction with the round rod brace bar was not used until 1929. It seems readily apparent from the photographs and testimony that the round brace rod constitutes a far greater hazard to safety than does the flat metal brace bolted to the car side. As to the relative safety of the 'U' type of brace, as compared with the round rod type used by defendant, the distinction as to safety is not so clear. The extent to which the 'U' type is in use does not appear.

It should also be pointed out that the other types of diagonal braces, except one, as shown by photographs, also differed from the round rod type in that they ran from a point on the bottom line of the car side or car end diagonally to the top corner, whereas the round rod runs from a point on the bottom line of the side of the car to a point on the side line of the car side approximately midway between the top and bottom, and a second brace, of the flat type, then runs from the midway point diagonally to a point on the top line of the car side. This causes the round rod to pass under the ladder rung at a different angle, and different position in relation to the ladder rungs than the single brace bar, which may render the round rod a greater hazard than the other types of bracing.

"The Safety Appliance Acts are to be liberally construed for the purpose of relieving trainmen of danger. (*United States* v. *Chicago, St. P., M. & O. Ry. Co.*, 43 Fed. (2d) 300 [71 A. L. R. 507] ; *Frye* v. *Chicago R. I. & P. Ry. Co.*, 157 Minn. 52 [195 N. W. 629, 196 N. W. 280].) A similar construction should be given to rules of the commission formulated under authority of these acts. In the light of this principle, we conclude that the clearance rule of the commission should not be construed as a legalization of the round rod type of brace in the space between car side and ladder, which creates a greater hazard than some, if not all, of the types of bracing generally in use when the commission's rule was adopted; that in such cases, even though there is a space of slightly more than 2½ inches between the outside of the round bar and the inside of the ladder rungs, it is for the jury to say whether the ladder is secure within the meaning of the Safety Appliance Act of 1910.

"What we have here said is not to be understood as an approval or requirement of any particular type of construction. It is for the railroads and the interstate commerce commission to solve engineering problems. But where the commission has not made a rule as to a particular matter, it is for the jury to decide whether the appliance is 'secure'. Evidence of the use of diagonal bracing, although of a different type, by other roads, and testimony of certain of defendant's witnesses that they knew of no other accident attributed to the round rod, were before the jury for consideration. The fact that other roads had accepted defend-

ant's cars of this type for movement over their lines, and the further fact that the commission had made no specific regulation as to these bars, although they had been in use since 1929, were circumstances to be weighed by the jury. ■ A carrier is authorized to refuse any car of another line if it does not comply with the safety appliance acts, and if it accepts a car which violates those acts, it is absolutely liable for injury due to such violation. (27 U. S. Stats. at L., p. 531; U. S. C. A., title 45, sec. 3; *Tyon* v. *Wabash Ry. Co.*, 207 Mo. App. 322 [232 S. W. 786, 790].) But we are of the view that these several facts, although pertinent for the consideration of the jury, do not compel the conclusion that as a matter of law the ladder was 'secure' within the meaning of the statute. (*Great Northern Ry.* v. *Donaldson*, 246 U. S. 121, 128 [38 Sup. Ct. 230, 62 L. Ed. 616, Ann. Cas. 1918C, 581]; *United States* v. *Chicago, St. P., M. & O. Ry.*, 43 Fed. (2d) 300, 315 [71 A. L. R. 507].)

■ ''For the most part defendant's assignments of error in the giving or refusing of instructions are disposed of by what we have said above. After the court had instructed the jury, it returned to ask certain questions of the judge. It appears that the jury wished to know whether in view of the clearance rule quoted above, it was authorized to find for plaintiff notwithstanding there was a space of more than 2½ inches between the diagonal bar and the ladder rung. The question was not very clearly put, and the judge's answer, as well as certain remarks made by him during the course of the trial and in the instructions already given, contains statements which might indicate a misconception of the law to the effect that although the commission had made a rule in regard to a particular detail of construction, nevertheless it was for the jury to say whether an appliance which conformed to the rule was 'secure' in that regard. But the judge also said: 'Now any provision or any condition imposed by the Interstate Commerce Commission, a compliance with that you could not—if that was complied with, that couldn't raise the question of negligence because they have to follow that particular rule.' We are of the view that the remarks of the judge which may seem to be in conflict with the quoted statement do not constitute reversible error.

"If this were a case where a rule of the commission regulated the matter under consideration, and liability depended on whether the facts showed compliance with said rule, it might well be held that the judge's statements constituted reversible error. But we have held that this is a case where the commission has not made a rule governing a condition shown to exist, and hence the question was, as stated repeatedly by the trial judge, whether by reason of this condition the ladder was insecure or unsafe within the meaning of the statute. The judge correctly instructed the jury that the only ground on which it could find the ladder insecure was the presence of the round brace bar."

■ Appellant, in its petition for rehearing, suggests that the above holding confuses an action for statutory violation of a Safety Appliance Act with an action for common law negligence.

To understand this contention it should be recalled that plaintiff claimed that in descending the side ladder of appellant's box car, he slipped upon a diagonal brace rod affixed to the side wall, back of the rungs of the ladder, which slip caused him to fall to the ground and suffer severe injuries. Upon trial of this action he waived any right of recovery for common law negligence and based his claim upon a violation of the provision of the Safety Appliance Act of 1910 to the effect that "all cars requiring secure ladders . . . shall be equipped with such ladders . . . " (36 U. S. Stats. at L., p. 298; U. S. C. A., title 45, sec. 11). He relied solely upon the presence of the round bar behind the ladder, contending that said bar rendered the ladder insecure, in violation of said act. The jury accepted this view and we have held that it was justified in its conclusion that the diagonal brace rod constituted a hazard making the ladder insecure, that is, unsafe for the use to which it was put.

■ Appellant contends that as the issues on the trial were narrowed to the question of violation of the Safety Appliance Act, i. e., to the sole question of whether the safety appliance—the side ladder—was defective, the above holding is unsound because the offending member (the brace rod) was no part of the safety appliance (the side ladder). Appellant states that the brace rod was an entirely separate device installed to add strength to the end of the box car

and that if it was the cause of the injury to plaintiff, then his remedy was an action based on common law negligence, not an action for violation of the Safety Appliance Act in the maintenance of an insecure ladder. Thus there arises a question not discussed in our former opinion, to wit: Was the dangerous device (the brace rod) a part of the safety appliance (the side ladder)? In other words, what constitutes the side ladder of a railroad box car? Are the component parts of the side ladder merely the two uprights and the cross bars, or rungs? If that were the case, in order to render a ladder secure and safe for the purposes of its intended use, it would merely be necessary to see that the uprights and rungs were without defect. For example, such a ladder might be so insecurely bolted to loose side boards of a box car as to practically wave in the breeze, yet under the limited view contended for by appellant, the ladder, having rungs and uprights without defect, would be ''secure''. The only logical conclusion is that the term ''secure ladder'' as used in the act and applied to a side ladder of a box car, includes security of the complete appliance as finally installed; that is, it refers to security of the rungs and uprights or front of the ladder, the bolts which hold it in place, that portion of the side wall of the car which serves as the back of the ladder and the clearance space behind and around the ladder necessary to its safe use. The act contemplates not only that an appliance shall be without defect or secure as to its construction but also that it shall be secure in matters pertaining to its location, installation, maintenance, and intended use.

There is no confusion with respect to the alleged cause of plaintiff's injury. He does not claim to have been injured by a defective device other than the ladder, i. e., a defective brace rod. His sole and only claim is that there was inserted between the front and back of the ladder a slippery rod which rendered the ladder unsafe. The ladder itself was the appliance which was unsafe in use, not the brace rod. And the reason the ladder was insecure was that the round rod had been so inserted in back of it as to create a hazard, despite the existence of the clearance specified by rule. It is obvious that the injection of a foreign article which is no part of an appliance would be as likely to render the appliance insecure as a direct defect in the appli-

ance itself. To borrow from an illustration of appellant's counsel, suppose there had been installed instead of a smooth rod, a rod with sharp pointed spikes protruding therefrom. Could it be said that the mere existing of the specified clearance between the pointed ends of the spikes and the rungs of the ladder, would meet the requirement to maintain a secure ladder? We are of the view that the jury in this case was justified in concluding that the round rod as installed in the space between the front and back of this particular ladder rendered it insecure in violation of said Safety Appliance Act.

We see no room for complaint on the ground that this holding has not been rendered in the light of practical railroad operation. The record shows plainly that many types of bracing other than the round rod installed in the manner here shown, are used by various railroads. Appellant's plea of the exigencies of the situation, in that re-equipment of its cars with a different type of bracing would work a great hardship upon it and necessitate the expenditure of a vast sum of money, of course relates to matters outside the record of this case. But even so, safety of employees, and not the financial problem, is the primary consideration. If a round diagonally-installed brace rod does constitute a dangerous trap and hazard in use of the side ladder, it should be eliminated. If it does not constitute a danger and a hazard, undoubtedly appellant may secure the promulgation of a rule by the interstate commerce commission which will protect it from future cases of this character. The extent of our holding here is that in the circumstances shown, there was a question for the jury as to whether the ladder herein was a "secure" ladder within the meaning of the statute. This decision does not hold that as a matter of law ladders of the type shown in this case are not "secure" within the meaning of the statute. It merely holds that a question for the jury was presented.

The judgment is affirmed.