J. C. ROE, Appellant,

v.

**PORT TERMINAL RAILROAD ASSOCIATION, Appellee.**

No. A2554.

Court of Civil Appeals of Texas, Houston (14th Dist.).

Aug. 12, 1981.

Rehearing Denied Sept. 10, 1981.

Tom R. Letbetter, George Payne, Garrett, Letbetter & Payne, Houston, for appellant.

Daniel O. Goforth, Kyle M. Rowley, Sewell & Riggs, Houston, for appellee.

Before J. CURTISS BROWN, C. J., and MILLER and PAUL PRESSLER, JJ.

J. CURTISS BROWN, Chief Justice.

This is a suit arising under the Federal Employer's Liability Act (FELA) brought for injuries allegedly caused by a violation of the Safety Appliance Acts (SAA). The controlling question is whether a grab iron which has as little as one-half inch movement or "play" should be regarded as *insecure* within the meaning of Sections Four and Eleven of the SAA and hence violative of such provisions as a matter of law, or whether a fact issue is presented.

J. C. Roe ("Roe" or "Appellant"), employed as a switchman by Port Terminal Railroad Association ("PTRA" or "Appellee"), brought suit against appellee for personal injuries sustained when appellant fell from appellee's gondola car while endeavoring to release the brake on such car in the course of performing switching operations for appellee. The accident occurred at approximately 8:00 p. m. on November 17, 1977 at the Byers Barge Terminal. Roe climbed onto the "B" end of car SP 330343, a gondola car, in order to release the brake on that car. Roe placed his right foot upon

the brake platform and his left foot upon the bottom grab iron on the "B" end of the car, close to the brake platform. Roe placed his left hand on the top grab iron (above his left foot), leaving his right hand free to release the brake lever. When he first grasped the top grab iron with his left hand, it did not move at all. He had good balance and his right grip was solid and firm. Before releasing the brake, he gave a signal by waving his lantern in a circle with his right hand. Roe reached to release the brake with his right hand. As he did so, the top grab iron suddenly moved between one-half inch and one inch. Neither end of the grab iron became disconnected. When the grab iron in question moved, Roe released his grip upon it, his right hand slipped off the brake lever and he fell onto his left hip. Roe sought to prove that he sustained a herniated disc as a result of the fall and he was totally disabled. Several witnesses who inspected the grab iron after the fact testified that the grab iron was loose or rattled.

Upon submission of special issues, the jury *refused* to find that (1) the grab iron was not secure; (2) PTRA was negligent in inspecting the car; or that (3) PTRA failed to provide a safe place to work. The jury did find that Roe released the grab iron and the brake handle, he was negligent in doing so, and his negligent acts were the proximate cause of his injuries. The jury found damages totaling $20,000.00.

Appellant contended in his brief that the jury's negative answer to Special Issue No. 1, inquiring whether the grab iron was "not secure," was "against all of the overwhelming probative evidence." This amounts to a great weight and preponderance point. Appellant on oral argument admits that review of such points is precluded on appeal of cases brought under the FELA. *Texas & Pacific Railway Co. v. Roberts*, 481 S.W.2d 798 (Tex.1972); *See Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). Appellant's deliberate attempt to evade the effect of this well-settled rule is not appreciated. Such assignments, knowingly made, waste the court's time and are not to be condoned.

Roe more seriously contends that the grab iron was, as a matter of law, not secure as required by Sections Four and Eleven of the SAA and therefore violative of the provisions of the SAA. PTRA does not contend that Roe waived any rights to appeal on this basis. PTRA's response is that (1) the SAA requires grab irons to be *secure* but does not define secure; (2) *secure* is synonymous with "safe"; (3) the evidence was conflicting as to whether the looseness of the grab iron rendered it unsafe; (4) a fact issue was presented as to whether the grab iron was unsafe; (5) absent a breakdown or complete failure to function, a jury question is presented, *Givens v. Missouri-Kansas-Texas Ry.*, 195 F.2d 225 (5th Cir. 1952); (6) the jury found against Roe on the safety issue by refusing to find that the grab iron was "not secure"; (7) from the evidence, the jury could reasonably conclude that the grab iron moved only one-half inch and such movement did not render it unsafe; (8) "[o]nly when there is a complete absence of probative facts to support the conclusion reached does reversible error appear", *Lavender v. Kurn*, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946); (9) here, the jury has exercised its discretion and its findings cannot be disturbed on appeal; and (10) in any event, Roe admitted he would not have fallen if he had not let go of the grab iron, and the jury could rationally conclude that the movement of the grab iron had nothing to do with the accident. PTRA does not dispute Roe's claim that the grab iron moved. PTRA does not claim that the grab iron could not have held fast under Roe's grip for a time and then suddenly moved at least one-half inch.

Liability under these provisions for personal injuries caused by a violation of the SAA follows from the unlawful use of prohibited defective equipment, not from the position the employee is in at the time of the accident nor from the act he is engaged in at such time. *Brady v. Terminal R. Ass'n of St. Louis*, 303 U.S. 10, 58 S.Ct. 426, 82 L.Ed. 614 (1938); *Missouri-Kansas-*

*Texas R. Co. v. Evans*, 151 Tex. 340, 250 S.W.2d 385 (1952). The Safety Appliance and Boiler Inspection Acts are liberally construed to effectuate their prime purpose of protecting railroad employees and others by requiring use of safe equipment. *Lilly v. Grand Trunk Western R. Co.*, 317 U.S. 481, 63 S.Ct. 347, 87 L.Ed. 411 (1943). These acts are regarded as amendments to the FELA, dispensing with the necessity of proving that violations of such safety statutes constitute negligence, making proof of such violations effective to establish negligence *per se* on the part of the employer, and entitling the employee to recovery upon satisfactory proof of a violation, causation and damages; the safety acts are supplemental to the FELA, intended to facilitate employee recovery. *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); 11 A.L.R.2d 252 (1950). The statutory duty imposed by these safety acts is absolute, not excused by any showing of care, however assiduous. *Brady v. Terminal R. Ass'n of St. Louis*, 303 U.S. 10, 58 S.Ct. 426, 82 L.Ed. 614.

With the foregoing rules in mind, we will examine the SAA requirements pertinent to the instant case:

"[I]t shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grab irons or handholds in the ends and sides of each car for greater security to men in coupling and uncoupling cars." 45 U.S.C.A. § 4 (1972).

"[A]ll cars having ladders shall also be equipped with secure handholds or grab irons on their roofs at the tops of such ladders." 45 U.S.C.A. § 11 (1972).

 The statutory duty of PTRA was to provide a *secure* grab iron. Therefore, the resolution of the controlling issue turns on the meaning of the word *secure* in these provisions. If *secure* means only "safe for the intended use", as PTRA argues, then the jury's resolution of the fact issue presented is final, precluding us from substituting our judgment for the jury's determination. On the other hand, if *secure* also means "firmly fastened", as Roe argues, then the issue has been resolved against PTRA as a matter of law because there is no dispute that the grab iron was not firmly fastened. Neither definition is complete.

Webster's defines *secure* as "free from risk of loss", and "affording safety", thus bolstering PTRA's position. Webster's Third New International Dictionary, 2053 (1967). The same dictionary also defines *secure* as "strong, stable or firm enough to ensure safety," qualifiedly presenting the notion that in order to be secure something must be firm or stable, as opposed to loose. The most frequently-cited case which addresses the issue of how secure is defined for the purposes of the SAA is *Davis v. Reynolds*, 280 F. 363 (4th Cir. 1922), *cert. denied* 258 U.S. 627, 42 S.Ct. 383, 66 L.Ed. 798 (1921). PTRA rightfully points out that the court held *secure* means "safe for the intended use." PTRA argues that the *Davis* holding thereby excludes "firmly fastened" from the definition of secure. Although such a proposition has not heretofore been advanced or addressed in any case known to us, other courts would not agree with appellee; their view is that *Davis* found secure, under the SAA, to mean *not only* "firmly fastened" *but also* "safe for the intended use." *Knight v. Chicago North Western Railway Co.*, 3 Ill.App.2d 502, 123 N.E.2d 128 (1954); *Scarlett v. Atchison T. & S. F. Ry.*, 7 Cal.2d 181, 60 P.2d 462 (1936), *rev'd on other grounds* 300 U.S. 471, 57 S.Ct. 541, 81 L.Ed. 748 (1937). Moreover, PTRA's definition of secure has been rejected in cases where a mishap occurred when foreign substances, such as ice, snow and grease, allegedly rendered safety appliances unsafe (therefore insecure). *Ford v. New York, N. H. & H. R. Co.*, 54 F.2d 342 (2d Cir. 1931), *cert. denied* 285 U.S. 549, 52 S.Ct. 405, 76 L.Ed. 939 (1931). *Raudenbush v. Baltimore & O. R. Co.*, 160 F.2d 363 (3d Cir. 1946); *Collins v. Southern Pacific Company*, 286 F.2d 813 (9th Cir. 1961), *cert. denied* 366 U.S. 923, 81 S.Ct. 1350, 6 L.Ed.2d 383 (1961). Another view is that the SAA contemplates that a safety appliance shall be without defect and secure as to construction, location, *installation, maintenance* and intended use. *Scarlett v. At-*

*chison T. & S. F. Ry.*, 7 Cal.2d 181, 60 P.2d 462. To such construction we would add, or within such construction we would read, the requirement that such appliances be "firmly fastened", as would be expected of properly installed and maintained appliances. Given the purpose of the SAA (to promote safety for those using railroad equipment) and the intended function of a grab iron (to provide firm, reliable support for employees during the myriad of jostling movements and changes of inertia expected in the operation of a railroad car), it would be anomalous to hold that a grab iron may be loosely fastened. We hold that *secure*, as used in Sections Four and Eleven of the SAA, means "firmly fastened" as well as "without defect and secure as to construction, installation, maintenance and intended use."

We are mindful of the expanded role of the jury in deciding FELA cases and the finality of jury verdicts in such cases. But no factual dispute exists. This is a question of statutory construction. We are not therefore precluded from deciding the issue contrary to the jury verdict. *See O'Donnell v. Elgin J. & E. Ry. Co.*, 338 U.S. 384, 70 S.Ct. 200, 94 L.Ed. 187 (1949). We hold that a grab iron which admittedly moves as much or as little as one-half inch is not "firmly fastened" and therefore not *secure* within the meaning of the SAA as a matter of law. Roe has established that PTRA violated the SAA in operating car SP 330343 with a defective safety appliance. Violation of the SAA should have been assumed as a matter of law, and only causation and damage findings were essential to recovery.

▪ PTRA's arguments that Roe admitted that he would not have fallen if he had not let go of the grab iron and that the jury found Roe's own negligence to be the proximate cause of his injuries are pertinent only to sustain jury findings on its behalf on issues of causation which were not reached in this cause because of the submission of and jury answer to Special Issue No. 1. In SAA cases an employer's common law defenses have been stripped from him and the question raised in such cases is whether such employer's violation played any part, even the slightest, in the employee's mishap. *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493.

▪ After oral argument, PTRA filed a motion to dismiss this appeal for want of jurisdiction. PTRA contends that Roe did not timely perfect his appeal. The question arises because the trial court sent a letter dated May 28, 1980 to the attorneys of record in the case informing them of his intention to overrule Roe's motion for new trial. On June 16, 1980, the trial court signed an order overruling Roe's motion. If the trial court rendered judgment on May 28, 1980 (the date of the letter), as PTRA argues, then Roe's transcript was not timely filed. In support of its position, PTRA relies on *Goff v. Tuchscherer*, 614 S.W.2d 934 (Tex.Civ.App.-Corpus Christi, 1981).

We find *Goff* distinguishable on the facts. The cases and the rules make it clear that, in the instant case, Roe's motion for new trial was overruled on the date the June 16, 1980 order was signed, notwithstanding the mailing of the May 28, 1980 letter. *Walker v. Harrison*, 597 S.W.2d 913 (Tex.1980); TEX.R.CIV.P. 306a; Tex.R.Civ.P. 306a, 386 (1978). We hold *Goff* does not control here, the trial court rendered judgment on the new trial motion on June 16, 1980, and Roe timely filed the transcript in this cause.

The judgment of the trial court is, therefore, reversed and remanded.

Reversed and remanded.